**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-cv-25402-KMW

STEVEN IVANKOVICH,

Plaintiff,

vs.

SCHILLER, DUCANTO & FLECK, LLP
and JOSEPH SEINITZ,

Defendants.
_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SCHILLER DUCANTO & FLECK, LLP'S *DAUBERT* MOTION TO BAR TESTIMONY OF PLAINTIFF'S EXPERT, JAMES DOPPKE, JR.**

Plaintiff Steven Ivankovich ("Mr. Ivankovich"), by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant Schiller, DuCanto & Fleck, LLP's ("SDF") Daubert Motion to Bar Testimony of Plaintiff's Expert, James Doppke, Jr. (ECF No. 72) (the "Motion"), and in support states as follows:

**I. Summary of Grounds for Response.**

James Doppke, Jr. ("Doppke") is a former senior counsel who spent fourteen and a half years investigating and prosecuting attorneys' misconduct for the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). (ECF No. 72-1, Ex. A; Doppke Dep. Tr., Volumes I and II, attached as Comp. Ex. 1, at 183:5-7, 183:19-191:13.) In addition to investigating attorneys' misconduct, Doppke represented the ARDC Administrator in 70 formal hearings, including more than 20 fully contested hearings. (ECF No. 72-1, Ex. A, at pp. 16-17.)

Doppke reviewed the evidence in this case in detail, including SDF's solicitation and use of covert surveillance footage, communications with the Summit County, Cook County, and

Monroe County Sheriff's Offices, records from law enforcement agencies, and transcripts detailing SDF's representations to the tribunal. Based on his review, Doppke has opined that SDF acted inconsistently with Rules 3.4(a), 4.4(a), 8.4(a) of the Illinois Rules of Professional Conduct, and also may have acted inconsistently with Rules 3.3(a), 4.1, 4.3, and 8.4(c) if the jury determines that SDF took certain actions with knowledge or intent to deceive. (ECF No. 72-1 at ¶¶ 11, 17, 25; ECF No. 72-2 at ¶¶ 10, 13, 17; ECF No. 72-3 at ¶¶ 8, 18.)

SDF moves to exclude Doppke's expert opinions on grounds that his opinions are: (1) irrelevant because this is not a malpractice case; (2) too equivocal to assist the jury; and (3) in the alternative, unreliable solely with respect to Rule 4.4(a). (ECF No. 72 at pp. 2-5.)

The Court should reject each of these three arguments. ***First***, SDF fails to cite to a single case holding that opinions about professional ethical rules are inadmissible unless a party pursues a malpractice claim. And cases from this Circuit hold the exact opposite. *Wyndham Vacation Ownership, Inc. v. Sussman*, No. 6:18-CV-2171-GAP-DCI, 2021 WL 5177339, at *2 (M.D. Fla. Nov. 5, 2021); *Diamond Resorts U.S. Collection Dev., LLC v. Newton Grp. Transfers*, LLC, No. 9:18-CV-80311, 2022 WL 1642865, at *2 (S.D. Fla. Mar. 31, 2022).

Here, Doppke's opinions are plainly relevant as they logically advance material elements of Mr. Ivankovich's claims, including elements of his claims for false imprisonment, malicious prosecution, abuse of process, and punitive damages sought under every Count. *See McDowell v. Brown*, 392 F.3d 1283, 1298-99 (11th Cir. 2004); *infra* at pp. 4-8. Among other elements, Mr. Ivankovich must prove unreasonable conduct, and to recover punitive damages must show that SDF acted "in conscious disregard of civil obligations" or with "excessive and reckless disregard of plaintiff's rights." *Harris v. Lewis State Bank*, 482 So. 2d 1378, 1385 (Fla. 1st DCA 1986); *Lindeman v. C.J. Stoll, Inc.*, 490 So. 2d 101, 103 (Fla. 2d DCA 1986).

The Illinois Rules of Professional Conduct provide critical context to assist the jury in determining whether SDF acted unreasonably or in reckless disregard of Mr. Ivankovich's rights, especially when measured against the baseline ethical rules that apply to attorneys.

***Second***, SDF mischaracterizes Doppke's testimony, and his opinions are not equivocal. SDF's position that Doppke did not opine that SDF violated any Rule of Professional Conduct is a red herring. Doppke testified that SDF acted inconsistently with the Rules of Professional Conduct, which meant that SDF's "conduct does not comport with the terms of the rule." (Comp. Ex. 1, Doppke Tr., at 28:14-29:2.) The reason he did not use the word "violated" is because violations are determined and issued only by the Illinois Supreme Court. (*Id.* at 27:23-28:2.) Because Doppke is not issuing formal violations in this case, he deliberately declined to find a violation and instead opined that SDF acted inconsistently with the Illinois Rules of Professional Conduct. (*Id.* at 27:14-17.) While Doppke's position is well-founded, if SDF disagrees, then they may cross-examine him or have their own expert, Martin J. O'Hara, rebut his opinion. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

***Lastly***, Doppke's Rule 4.4(a) opinion is grounded in the text of the Rule, the undisputed factual record, and his extensive professional experience. SDF's disagreement with his conclusions might affect the weight of his testimony but does not affect its admissibility. *Id.*

For the reasons set forth below, the Court should deny SDF's Motion.

## II. <u>Legal Standard.</u>

A party offering an expert bears the burden of laying a proper foundation by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). A party satisfies that burden where (1) the expert is qualified to testify about the matters he or she intends to address; (2) the methodology is "sufficiently reliable as determined by the sort of

inquiry mandated in *Daubert*;" and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).

To be qualified, an expert must have sufficient "knowledge, skill, experience, training, or education to form a reliable opinion about an issue that is before the court." *Hendrix ex. Rel. Evenflo Co., Inc.*, 609 F. 3d 1183, 1191 (11th Cir. 2010) (citing Fed. R. Evid. 702).

An expert's opinion is reliable if it is based on scientific, technical, or other specialized knowledge. *United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004). In addition, an expert's opinion is helpful if it is relevant to an issue, "logically advances a material aspect of the proposing party's case." *McDowell*, 392 F.3d at 1298-99.

Moreover, the Court's role under *Daubert* is not to weigh the expert's opinions or supplant the province of the jury because disputes as to the strength of an expert's opinion "go to the weight rather than the admissibility of his testimony." *Frazier*, 387 F.3d at 1262.

## III. Argument.

### A. Doppke's Opinions are Relevant to Both Mr. Ivankovich's Claims and His Prayer for Punitive Damages.

SDF's main argument is that Doppke's opinions are irrelevant because Mr. Ivankovich's claims "can be brought by and against attorneys and non-attorneys alike," and Mr. Ivankovich therefore does not "need to establish a violation of rules of professional conduct applicable to attorneys in order to succeed on any of the claims." (ECF No. 72 at p. 3.)

The Court should reject this argument for four reasons. ***First,*** SDF fails to cite to any authority holding that rules of professional conduct are irrelevant unless it is a malpractice case. (ECF No. 72 at pp. 2-3.) In contrast, well-settled precedent holds that rules of professional conduct

are routinely admitted as relevant evidence, and even the preamble to the Illinois Rules of Professional Conduct makes clear that while a violation of the Rules does not create an independent cause of action, the "Rules are designed to provide guidance to lawyers" and "since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct." (Preamble to Illinois Rules of Professional Conduct, Article VIII, at ¶ 20.)

For that reason, a plaintiff may present expert testimony concerning the Rules of Professional Conduct whenever that testimony "logically advances a material aspect" of the plaintiff's claims. *See McDowell*, 392 F.3d at 1298-99; *Wyndham*, No. 6:18-CV-2171-GAP-DCI, 2021 WL 5177339, at *2-3 (denying *Daubert* motion and permitting expert opinions on legal ethics in FDUTPA case because whether "practices conformed to the rules of his profession is generally acceptable" to prove tortious conduct); *Diamond Resorts*, No. 9:18-CV-80311, 2022 WL 1642865, at *2 (denying *Daubert* in part because expert opinion on legal ethical rules was relevant to whether conduct constituted tortious interference).

Expert opinions on legal ethics are especially helpful to the jury because a "lay jury is unlikely to be familiar with the intricacies of the legal profession and what practices generally conform to the ethical rules." *Wyndham*, No. 6:18-CV-2171-GAP-DCI, 2021 WL 5177339, at *2. A jury can thereby consider the evidence and expert testimony and, then, it is "up to the jury to determine whether [the attorney] violated those rules and whether such a violation amounts" to unlawful conduct. *Id.*

In fact, the decision in *Wyndham* is directly in point. In *Wyndham*, the plaintiff offered expert testimony on Florida's and California's Rules of Professional Conduct to support its FDUTPA claim, and the defendants argued – just as SDF does here – that these opinions were

"immaterial" to the elements of a FDUTPA claim. *Wyndham*, No. 6:18-CV-2171-GAP-DCI, 2021 WL 5177339, at *1. The Court rejected that argument and explained that violations of ethical rules are directly relevant to whether the attorneys committed deceptive or unfair trade practices. *Id.* at *3.

This case is even clearer than *Wyndham.* Doppke's opinions will assist the jury to understand the controlling ethical rules, and whether the attorneys' violations of those rules constituted torts under Florida law. Each of Mr. Ivankovich's Florida common law claims include elements that are logically advanced by Doppke's opinions.

To prove his false imprisonment claim, Mr. Ivankovich must prove "(1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or 'color of authority', and (4) which is unreasonable and unwarranted under the circumstances." *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 3d DCA 2010). In determining the reasonableness of the conduct, a jury must evaluate whether the "manner, length, or conditions of confinement [were] unreasonable even if initial detention was warranted." *Amparo v. Classica Cruise Operator Ltd., Inc.*, No. 20-CV-60896-RAR, 2021 WL 4989915, at *6 (S.D. Fla. Oct. 26, 2021).

Doppke's opinions support Mr. Ivankovich's position that SDF acted unreasonably – and inconsistently with their legal ethical obligations – both by (i) procuring Mr. Ivankovich's arrest using illegal surveillance, unlawful modifications to the National Crime Information Center ("NCIC") database, and failing to inform Mr. Ivankovich or his attorneys about these modifications, and (ii) objecting to his release for thirty-five days with knowledge that he could never be extradited and, therefore, should not be in custody. (*See* ECF No. 72-1, 72-2, 72-3 (Doppke's expert reports analyzing these facts).)

Doppke's opinions similarly provide a baseline by which the jury can evaluate Mr. Ivankovich's malicious prosecution and abuse of process claims. Malicious prosecution requires that Mr. Ivankovich prove, among other elements, the "absence of probable cause for the original proceeding" and "malice on the part of the present defendant." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994).

Doppke should be allowed to testify about the controlling Rules of Professional Conduct and how SDF failed to comport with those Rules as this bears directly on SDF's failure to have probable cause to arrest Mr. Ivankovich and their malice shown by circumventing the ethical rules. *See, e.g.*, *Lindeman v. C.J. Stoll, Inc.*, 490 So. 2d 101, 103 (Fla. 2d DCA 1986) (describing probable cause standard in malicious prosecution claim where party "willfully, wantonly, oppressively, and maliciously" cause appellant to be criminally prosecuted merely to coerce her to pay an alleged debt"); *Alamo Rent-A-Car, Inc.*, 632 So. 2d at 1357 (malice can be shown by inferences which show the "lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others").

Doppke's opinions also advance Mr. Ivankovich's claim for abuse of process. Mr. Ivankovich must prove that SDF "made an illegal, improper, or perverted use of process" with an "ulterior motive." *Svistina v. Elbadramany*, No. 22-CV-20525, 2023 WL 34642, at *5 (S.D. Fla. Jan. 4, 2023) (citing *EMI Sun Village, Inc. v. Catledge*, 779 F. App'x 627, 635 (11th Cir. 2019).)

Doppke opines that SDF did not comport with ethical rules when they used surveillance footage in violation of Mr. Ivankovich's legal rights and then procured changes to the NCIC database without informing Mr. Ivankovich or his attorneys. (ECF No. 72-1 at ¶¶ 11, 17, 25; ECF No. 72-2 at ¶¶ 10, 13, 17; ECF No. 72-3 at ¶¶ 8, 18 (finding that actions did not comport with Rules 3.4(a), 4.4(a), 8.4(a) and, if carried out with knowledge or intent to deceive, also did not

comport with Rules 4.1(a) and 8.4(c).); *see also Scozari v. Barone*, 546 So. 2d 750, 752 (Fla. 3d DCA 1989) (reversing summary judgment where writ was used as leverage in matrimonial dispute); *see also Dubai World Corp. v. Jaubert*, Case No. 09-civ-14314-JEM, 2010 WL 11504310, at *3 (S.D. Fla. July 8, 2010) (detention and passport confiscation based on process misused to extort money).

***Third***, Doppke's opinions are independently relevant to proving punitive damages sought in every Count alleged against SDF. To recover punitive damages, Mr. Ivankovich must prove "actual malice, or where the defendant's act was willfully done in a wanton and oppressive manner and in conscious disregard of civil obligation." *Harris v. Lewis State Bank*, 482 So. 2d 1378, 1385 (Fla. 1st DCA 1986). This includes unlawful conduct which seeks to "willfully, wantonly, oppressively, and maliciously . . . coerc[e] [Mr. Ivankovich] to pay an alleged debt." *See C.J. Stoll, Inc.*, 490 So. 2d at 103 (addressing with respect to malicious prosecution claim). Doppke's opinions concerning SDF's deviation from the ethical rules applicable to their profession is squarely relevant to whether SDF acted in conscious disregard of Mr. Ivankovich's rights, and whether a jury should award punitive damages.

***Lastly,*** considering the authority cited herein and the facts of this case, SDF's position that Doppke's opinions should be excluded because non-attorneys can also commit torts is illogical. Expert testimony is relevant so long as it logically advances a material aspect of ***this*** case which involves attorneys, even if it might not logically advance a material aspect of ***another*** case which does not involve attorneys. Under SDF's position, professional standards are automatically irrelevant whenever a tort can be committed by both a professional and a non-professional. Unsurprisingly, SDF's position has no legal support, and there is no case cited in the Motion to support this argument. (ECF No. 72 at pp. 2-3.)

### B. Doppke Has Offered Reasonably Certain Opinions and SDF Misconstrues his Terms of Art as Equivocation.

SDF next argues that Doppke's opinions should be excluded because he "has not formed an opinion that SDF violated any rule" and that the "worst Doppke had to say was that Stanish and Crémoux's conduct 'may have been inconsistent' with the Rules of Professional Conduct but not in violation of them." (ECF No. 72 at pp. 3-4.)

SDF's argument contradicts Doppke's testimony – in which he plainly testified that SDF in fact acted inconsistently with multiple Rules of Professional Conduct – and misconstrues his intentional use of terminology acquired from over fourteen years of experience at the ARDC.

***First,*** Doppke clearly testified that his opinions that SDF acted inconsistently with the Rules meant that SDF did "not comport with the terms of the rule." (Comp. Ex. 1, Doppke. Tr., at 28:14-18.). Doppke further explained that he used the term inconsistent instead of violation for a specific technical reason, grounded in his expertise, which is that only the Illinois Supreme Court can find or issue violations.

Doppke explained this technical distinction:

> Q. And you've testified already here today that you've reasonably inferred from the documents that you've reviewed that Ms. Stanish violated Rule 8.4(c), correct?
>
> A. My -- my review of the documents indicates that her conduct was inconsistent with the rule. **And I use that phrasing deliberately and specifically to say inconsistent with the rule.**
>
> Q. But that that's how you just phrased it now, but previously you testified that you've reasonably inferred that she has violated Rule 8.4(c). You testified to that earlier. Are you retracting that testimony?
>
> **A. Only the Supreme Court can determine whether she's violated a rule. My testimony is that her test -- her conduct was inconsistent with the rule.** That's what my opinion says.

> Q. Let's make sure there's a clear record here. Is it your opinion that -- strike that. Have you reasonably inferred from your review of the evidence that Ms. Stanish violated Rule 8.4(c)?
>
> A. I can't establish a violation in and of myself. I can say that I believe that her conduct was inconsistent with the rule.
>
> **Q. And when you say "inconsistent," is that a violation, or is that something short of a violation?**
>
> **A. It's -- in my view, her conduct does not comport with the terms of the rule.**
>
> Q. Okay. So inconsistent under your phrasing is a simile for violation, fair?
>
> A. You're interpreting it that way. **I don't say the word "violation" because I am not a party who is responsible for determining whether a violation has occurred in a sense that it's the Supreme Court that determines that.**

(Comp. Ex. 1, Dopp. Tr., at 27:20-29:2 (emphasis supplied).)

Doppke reiterated this explanation multiple times during his deposition, while clearly opining that SDF, through its attorneys Stanish and Crémoux, acted inconsistently with Rules 3.4(a), 4.4(a), and 8.4(a). (*Id.* at 32:19-33:23, 34:6-10; ECF No. 72-1 at ¶ 22, ECF No. 72-3 at ¶¶ 8, 18.) Doppke is entitled to use the technically correct term, and his opinion should not be excluded because he does not use the term that SDF's counsel prefers.[1]

***Second,*** SDF argues that Doppke should be precluded from testifying because in some instances, he opined that SDF "may have" acted inconsistently with a particular Rule of Professional Conduct, depending on SDF's knowledge or intent to deceive. SDF again overreaches. In two instances, Doppke testified that SDF may have acted inconsistently with the Rules of Professional Conduct to the extent that (i) SDF knowingly allowed Monroe County to believe that Crémoux was calling from the Chicago Police Department, and (ii) SDF procured

[1] At one time, Doppke did testify that Stanish violated Rule 8.4(c) and Crémoux violated Rules 8.4(b) and 8.4(c) because her conduct failed to comport with that rule and later explained that the correct term to use is "inconsistent with." (*Id.* at 24:10-22. 27:18-28:2.)

"Nationwide Extraditable" in the registration of the body attachment orders, with knowledge that doing so was not permitted. (ECF No. 72-1 at ¶ 17, 25.)

Doppke's use of qualified language in both instances is intentional and justified. In the first instance, Doppke did not determine whether Crémoux knowingly misled Monroe County. (Comp. Ex. 1, Doppke. Tr., at 104:14-105:8, 117:5-117:6.) In the second instance, Doppke again did not determine SDF's actual knowledge or Crémoux's state of mind at the time. (*Id.* at 156:20-157:15, 158:12-159:8.) Doppke therefore qualified his opinion and explained that SDF acted inconsistently with Rules 4.1, 4.3, 8.4(c) "to the extent that" SDF knowingly created a misimpression as to their identity or the content of court orders. (ECF No. 72-1 at ¶¶ 17, 25.)

Doppke's use of qualified language does not render these opinions inadmissible; instead, these qualifications provide nuance that defers ultimate issues to the trier of fact. *See Walker v. Gordon*, 46 F. App'x 691, 696 (3d Cir. 2002) (affirming denial of *Daubert* motion and hearing where expert assumed facts because parties were "perfectly free to explore on cross-examination the reliance placed by Dr. Toborowksy on the disputed facts and to argue to the jury that, if it rejected the underlying factual premises of his report, it should also reject Dr. Toborowsky's expert opinion on Walker's mental state"). And to the extent that SDF disagrees, they may cross-examine Doppke at trial concerning the weight of his opinions. *See Daubert*, 509 U.S. at 596.

Moreover, SDF's reliance on *Griffin v. Coffee County*, 623 F. Supp. 3d 1365, 1372 (S.D. Ga. 2022), is misplaced. In *Griffin*, a causation expert was not permitted to opine on causation in a wrongful death case because the expert simply stated that the decedent "may (or may not) have survived with earlier medical intervention" and he could not make any determination "because of a variety of variables." Here, Doppke reaches definitive opinions on where SDF acted inconsistently with the Rules of Professional Conduct, and further opines on instances where SDF

acted inconsistently contingent on SDF's actual knowledge, which can be evaluated at trial by the trier of fact.

### C. Doppke's Opinion Regarding Rule 4.4 Is Reliable and Based on Sufficient Facts.

As a last-ditch argument, SDF contends that Doppke's opinions concerning Rule 4.4(a) should be excluded because surveillance revealing Mr. Ivankovich's location could not constitute evidence under Rule 4.4(a) and Doppke could not "identify a specific legal right of Steven that SDF theoretically violated." (ECF No. 72 at pp. 4-5.)[2]

Both arguments are without merit. Rule 4.4(a) of the Illinois Rules of Professional Conduct provides, in relevant part, that "[i]n representing a client, a lawyer shall not use . . . methods of obtaining evidence that violate the legal rights of [a third] person." (*See* ECF No. 72-1 at ¶ 5 (quoting relied upon portion of Rule 4.4(a).)

Doppke opined that SDF acted inconsistently with this Rule by collaborating with Seinitz to obtain covert surveillance footage of Mr. Ivankovich and then use that information to procure Mr. Ivankovich's arrest and thirty-five-day detention. (ECF No. 72-1 at ¶¶ 5-11, ECF No. 72-3 at ¶¶ 3-8.)

***First,*** Doppke reliably concludes that the surveillance footage is "evidence" under Rule 4.4(a) because it was information used to arrest and continue to detain Mr. Ivankovich. Doppke explained that Rule 4.4(a) does not define the term evidence, and that a plain reading of the Rule would include any "information that can be made available to lawyers . . . to be used for some

---

[2] SDF also mischaracterizes Doppke's opinion as finding that SDF "may" have acted inconsistently with Rule 4.4(a). But Doppke opined that SDF ***did*** act inconsistently with this Rule. (ECF No. 72-1 at ¶ 11 (opining that Stanish's conduct "was inconsistent with Rule [4.4(a)]"); ECF No. 72-3 at ¶ 8 (reiterating same opinion after consideration of additional evidence).

purpose in connection with the legal proceeding." (Comp. Ex. 1, Doppke Tr., at 96:10-97:5.) Doppke further testified that Mr. Ivankovich's location was evidence because his location was "very much contested" with respect to obtaining and enforcing body attachment orders, such that "his whereabouts were an enormously important issue from what I could understand." (*Id.* at 99:18-101:4.)

Doppke also distinguished the authority relied upon by SDF and explained that it would not control the definition of evidence under Rule 4.4(a) because the Rule was enacted in 2010, which was over forty years after this decision. (*Id.* at 97:13-99:16.) In any event, Doppke considered that decision and still concluded that the surveillance information at issue in this case constitutes evidence under Rule 4.4(a). Doppke's opinion, which is based on his specialized knowledge interpreting the Rules of Professional Responsibility as a long-term ARDC prosecutor, is admissible.

Doppke's opinion is well-founded. The decision in *County Treasurer v. First National Bank of Lake Forest*, 87 Ill. App. 2d 133, 137 (Ill. App. Ct. 1967) relied upon by SDF, does not address whether a party's location is considered evidence. And a person's physical location or location data used to procure an arrest is routinely held to be "evidence" that can be suppressed in criminal cases under Florida and Illinois law. *Craig v. State*, 394 So. 3d 1165, 1168 (Fla. 4th DCA 2024) (location information leading to arrest constituted evidence which should be suppressed in event of constitutional violation); *State v. Sylvestre*, 254 So. 3d 986, 992 (Fla. 4th DCA 2018) (suppressing evidence of party's location when it was obtained without a warrant); *see also People v. Smith*, 2017 IL App (1st) 141814-UB, ¶ 98 (Ill. Ct. App. 2017) (unpublished) (remanding to consider suppression of location information used for arrest).

Moreover, Doppke's opinion fits the evidence. SDF obviously believed that Mr. Ivankovich's location was critical to their divorce proceeding. That is why SDF devoted extensive resources to obtain and use Mr. Ivankovich's location against him. The surveillance footage is evidence under a reasonable understanding of the term.

***Second***, Doppke identified specific legal rights that SDF violated. SDF fails to disclose this testimony because, at its core, SDF simply disagrees with Doppke's opinions. Of course, disagreeing with Doppke's opinion does not justify excluding it.

Doppke explained that "legal rights" under Rule 4.4(a) are "not specifically defined in the terms of the rule itself or in the comments to it" and can be defined based on common sense understandings of a person's rights. (Comp. Ex. 1, Doppke. Tr., at 77:5-78:14.) During his deposition, Doppke distilled his analysis to three rights: (i) Mr. Ivankovich's right to privacy; (ii) Mr. Ivankovich's right to not have Seinitz access his personal property; and (iii) Mr. Ivankovich's right as a litigant in the divorce case. (*Id.* at 83:9-15.) Even SDF's counsel understood and distilled the legal rights into those three categories. *Id.*

Doppke also expanded on how he identified those rights:

> Q. Well, strike that. What legal right did my clients potentially violate?
>
> A. The concept of legal rights under Rule 4.4(a) is not specifically defined in the terms of the rule itself or in the comments to it. It is not limited to the concept of constitutional rights or any other particular kind of right.
>
> So my view of it and my understanding of the rule, based on my experience in interpreting it, is that it refers to a person's rights in a broader sense than just constitutional rights or a right to privacy or what have you.
>
> So when I concluded what I concluded in my report, what I meant is to say that my opinion is that Ms. Stanish's conduct, to the extent that Seinitz used access to the security camera images that he was not entitled to access and to the extent that she then used those images, that was in violation of Mr. Ivankovich's rights not to be surreptitiously photographed; not to have his surreptitiously photographed image

> transmitted to opposing counsel in the divorce case; not to have his employee, or former employee, whichever it was, using, unauthorizedly, equipment that was installed to benefit him.
>
> My concept is that those were rights that Mr. Ivankovich had that were violated by what occurred here.

(Compl. Ex. 1, Doppke Tr., at 77:11-78:11.)

In conclusion, Doppke testified that Mr. Ivankovich "had a right, in my view, as a party not to have opposing counsel access images that would have otherwise been taken only for his benefit and for his protection but were accessed unauthorizedly without his knowledge, permission, or consent." (*Id.* at 87:22-88:12.)

Based on his experience as a former ARDC prosecutor, careful consideration of the evidence, and examining the plain language of the ethical rule, Doppke identified specific legal rights under Rule 4.4(a) that SDF violated. These opinions are reliable and should be admissible. *Wyndham*, No. 6:18-CV-2171-GAP-DCI, 2021 WL 5177339, at *3 (holding that expert opining on legal ethics can rely on specialized knowledge and does not need to engage in scientific analysis because "determining whether an attorney's conduct complies with rules of professional conduct is not a scientific inquiry"). SDF's arguments implicate the weight of Doppke's testimony, which is a matter properly reserved for cross examination. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (explaining that even "shaky" evidence is more appropriately reserved for cross examination because "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence" or to "supplant the adversary system or the role of the jury").

For these reasons, the Court should deny the Motion.

Respectfully Submitted,

*/s/ Joshua Truppman*
Joshua Truppman, Esquire
Florida Bar No. 111795
joshua@bfwlegal.com
Benjamin H. Brodsky, Esquire
Florida Bar No. 73748
bbrodsky@bfwlegal.com
BRODSKY FOTIU-WOJTOWICZ, PLLC
44 W. Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 503-5054
Telecopy: (786) 749-7644
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the following was served electronically through the Court's CM/ECF System upon all parties registered to receive electronic notice in this case on this **18th day of September, 2026**.

/s/ *Joshua Truppman*
Joshua E. Truppman, Esq.