# EXHIBIT 6

Certified Shorthand Reporters
Scheff & Associates
Tel. (312) 214-1994
Fax (312) 214-1995

# JEANETTE IVANKOVICH v. STEVEN IVANKOVICH

## November 6, 2024

## COURT PROCEEDINGS

## 2021 D 9220

221 N. LaSalle St., Suite 1950 Chicago, IL 60601
scheffcsr@sbcglobal.net www.scheffreporting.com

STATE OF ILLINOIS )
) SS.
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:

JEANETTE IVANKOVICH, )
)
Petitioner, ) ORIGINAL
)
and ) No. 2021 D 9220
)
STEVEN IVANKOVICH, )
)
Respondent. )

REPORT OF PROCEEDINGS had via Zoom videoconferencing before the HONORABLE REGINA SCANNICCHIO, Judge of said Court, Richard J. Daley Center, Chicago, Illinois, on the 6th day of November, 2024, at 10:25 A.M.

Reported for
SCHEFF & ASSOCIATES, by

A P P E A R A N C E S

PRESENT:

SCHILLER, DUCANTO & FLECK
BY: MS. TANYA STANISH,
MS. MORGAN HANDWERKER and
MR. KEVIN CREMOUX
321 North Clark Street
Suite 1200
Chicago, Illinois 60654
(312) 641-5560
tstanish@sdflaw.com
mhandwerker@sdflaw.com

appeared via remote access on behalf of the Petitioner;

BEERMANN, LLP
BY: MR. MATTHEW D. ELSTER,
MR. THOMAS T. FIELD and
MR. JASON A. KRAWETZ
161 North Clark Street
Suite 3000
Chicago, Illinois 60601
(312) 621-9700
mdelster@beermannlaw.com
ttfield@beermannlaw.com
jkrawetz@beermannlaw.com

and

APPEARANCES CONTINUED:

DUSSIAS, WITTENBERG, KOENIGSBERGER, LLP
BY: MR. MICHAEL G. WITTENBERG and
MS. KATHLEEN OPAL
250 South Wacker Drive
Suite 600
Chicago, Illinois 60606
(312) 226-8840
swg@dwkllp.com
kopal@dwkllp.com

appeared via remote access on behalf of the Respondent;

SFBBG
MR. JEFFREY HEFTMAN
300 South Wacker Drive
Suite 1500
Chicago, Illinois 60606
(312) 648-2300
jeffrey.heftman@sfbbg.com

appeared via remote access on behalf of Olga and Anthony Ivankovich;

ALSO PRESENT VIA REMOTE ACCESS:

MS. JEANETTE IVANKOVICH, Petitioner and

MR. CY PORRAS, observing.

* * * * *

MS. STANISH: Tanya Stanish and Morgan Handwerker, Kevin Cremoux is a knew associate at the firm who's joining the case on behalf of Jeanette Ivankovich, who's also present on the Zoom.

MR. WITTENBERG: Steven Wittenberg and Kathleen Opal on behalf Steven Ivankovich.

MR. ELSTER: Tom Field, Matthew Elster, Jason Krawetz from Beermann, LLP on behalf Steven as well.

MR. HEFTMAN: Jeffrey Heftman on behalf of Olga and Anthony Ivankovich.

MS. STANISH: I see Mr. Cy Porras on the Zoom so I am not sure who he's here to represent.

THE COURT: Counsel, good morning.

MR. PORRAS: Good morning. Cy Porras, just here to monitor. I am not appearing on behalf of anyone.

THE COURT: Okay. Just observing?

MR. PORRAS: Yes, Judge.

THE COURT: Okay.

MS. STANISH: Judge, this is up for status

this morning. So there's several things, actually, that we need go through. I have a list and I can go through them.

First and foremost maybe is just an update to your Honor since we were last in front of you in person and you had encouraged some movement in terms of providing funds to Ms. Ivankovich. That did not happen.

She has not received any spousal or child support. She did get, I think, a $250 -- I don't know if it's actually per week or per month, I don't want to misspeak, food allotment of some sort from Mr. Ivankovich. And we have not received any attorneys' fees.

In the meantime, both the Beermann firm and the DWK firm have continued to get paid from Mr. Ivankovich. We sent updated fee affidavits that show the payments that were made to the law firms.

MR. WITTENBERG: I don't want to interrupt, but that's not true. That's just a fact that's not --

THE COURT: Mr. Wittenberg, I am going to give you an opportunity.

MR. WITTENBERG: Okay.

THE COURT: I want you to go through these one by one and then if counsel wants to respond, we'll do them individually. I don't want there to be too much back and forth, okay?

MR. WITTENBERG: That's fine.

MS. STANISH: So Mr. Wittenberg's payment was made on the day, I believe, that we were in court when he said to the judge we -- when he said to your Honor that I had the wrong number and he had just received a certain number of dollars.

Beermann's payment was made, I believe, the day after we were in court and they received additional funds from Mr. Ivankovich.

Again, the affidavits are the affidavits, Judge. You can look at the affidavits that we tendered to you at the end of August and then you can look at the affidavits that we tendered to you at the end of September, et cetera, and you can see that the payments at the

end of October and you can see that the payments have continued to be gotten -- continued to be made on behalf of Mr. Ivankovich towards his various counsel.

I am not sure how they are going to shout out and say that they haven't received various payments over time. They have. So the numbers are the numbers.

So that's where we are.

THE COURT: So that's the first issue that we were up for status on, correct?

MS. STANISH: Correct.

THE COURT: Okay. So if anyone has any additional information of any other funds, whether it be in the form of court ordered spousal support or court ordered child support or court ordered fees, pipe up.

MR. WITTENBERG: Judge, I will pipe up on one issue which is between the last date when I appeared in court when I disclosed what fees I received and today's date, I have received no additional fee payments from Mr. Ivankovich. That

is a fact.

THE COURT: Anyone else?

MR. ELSTER: The last payment our firm received was September 26th, which was part of the affidavit we tendered to your Honor on, I believe, it was September --

MR. FIELD: 30th.

MR. ELSTER: -- 30th. We received no subsequent payments. So counsel's statement that we continue to get paid is false.

MS. STANISH: No, it's not false, counsel. I was referring to that payment --

MR. ELSTER: I am not talking to you.

THE COURT: Counsel.

MS. STANISH: -- which was made after we appeared in court.

THE COURT: Counsel.

MR. ELSTER: The representation was we continue to be paid.

MS. STANISH: Correct.

MR. ELSTER: We have not received a payment in over a month.

THE COURT: Well, I hear you, but I also have court orders that there's no compliance with. That's my overall statement. There are court orders in place that there is no compliance with.

Okay. Ms. Stanish, what's the next issue?

MS. STANISH: Judge, staying on the fee issue for one moment. We also asked Mr. Heftman, who represents the parents and various LLCs to provide his fee information under your court order, which requires parties to provide.

So at least as it pertains to the parents, I also think it should pertain to the LLCs since they are all interconnected to one another here and they have a joint defense agreement.

Mr. Heftman has refused to provide his fee information to us in the form of an affidavit. We sent a letter to him asking him to do that.

He returned a letter saying he was not obligated to do that under your court order.

So I would like the Court to consider

compelling Mr. Heftman to do the same things that the parties are doing. He's got two parties now, he's got Anthony and Olga and he also represents various LLCs. I would like it to apply to the various LLCs that he represents as well.

THE COURT: Mr. Heftman?

MR. HEFTMAN: Your Honor, that request is the subject of a Motion to Quash filed by my firm, which is fully briefed, for which we can have a hearing date.

The court's order, respectfully, relates to the parties and the petition to the marriage for which Section 508 is simply directed toward -- or directs towards the spouses with respect to any award of attorneys' fees.

There are other third parties that have been joined as parties, Celadon, for example. I fail to see the relevance of any fees incurred by third parties with respect to what the issue that the Court was addressing which was an interim attorney fee award as between the parties to the marriage.

There's been no discovery propounded against my clients. Respectfully requests -- suggests that it's overreaching to direct the third parties produce fee information when it specifically -- the only purpose for which it is being asked is in the context of an interim fee petition.

MS. STANISH: Judge, if I may, two different things there that he said. Number one is, we sent a subpoena to his firm for fee information. He moved to quash it. So that's -- that's totally separate and apart. That will need to get heard by your Honor.

Separate and apart from the subpoena issue, which, again, move to quash, don't want to provide that information that way either. He is now saying he also doesn't have to provide information under your Court's directive in a court order to do so.

He's -- he's claiming that that court order doesn't apply to his parties, the parents, in order to provide that information.

So, again, I think this is up to the Court to decide if Anthony and Olga Ivankovich as well as the LLCs are required to produce the same monthly fee affidavit that we're all required to produce not only for interim fee reasons, for a multitude of other reasons in this case.

THE COURT: Counsel?

MR. HEFTMAN: If there is a multitude of one -- it cannot be relevant with respect to the interim fee petition so far as your order --

THE COURT: Mr. Heftman?

MR. HEFTMAN: Yes.

THE COURT: I don't think Ms. Stanish just referenced the interim fee petition.

MR. HEFTMAN: It's two issues.

THE COURT: Correct.

MR. HEFTMAN: One, an interim fee and then a non-specific multitude of other issues. Without identifying it, I could only speculate, I could presume she's referring to fraudulent transfer claims, which are the subject of the Motion to Dismiss.

It would be -- if Ms. Stanish wants discovery to support her claims for fraudulent transfer, then she should propound discovery.

But I don't think it's appropriate with respect to simply request that every party to this action simply produce attorneys' fees information in order to further Ms. Stanish's cause of actions. That's what discovery is for, Judge.

We have the opportunity to object and to address those issues.

THE COURT: Still I think, counsel, what you might be missing is the fact of the basis for bringing Olga and Anthony into these proceedings, which were arguments that were made on behalf of Mr. Ivankovich, the -- the respondent in this case who claimed that his parents are his sole support in the financial resources that are available from his sole support for this family.

And with that in mind, that is why the Court entered the order regarding the requirement of the parties and primarily Anthony and Olga at this point, and, Ms. Stanish, I'll get into the

other issues regarding the LLCs, but specifically with Anthony and Olga, the fee affidavits needs to be complied with as far as the court order is concerned.

Okay. What's the next issue?

MS. STANISH: The next issue, Judge, if you recall, we had made a request that, I think, one of the last occasions we were in front of you in person, that the arrears on the support for my client, the spousal support and the child support, be put into the form -- even though it's a monthly judgment every time Mr. Ivankovich doesn't pay, that the total accumulated arrears be put into a court ordered form as of a current date showing the amount of the judgment against Mr. Ivankovich.

This would make it easier for us to potentially collect this judgment against Mr. Ivankovich.

He stands in arrears at this point of over $800,000 in unpaid child and spousal support. So we drafted a court order that has that amount as of the current date and we would like to court

order memorializing the judgment amount against Mr. Ivankovich entered by your Honor.

MR. KRAWETZ: Judge, I am going to respond that that one. So when we were in court -- the last time we were in court in person, I apologize, I don't remember the date offhand and counsel handed up an order and it has handwritten on it that it's an oral motion of petition.

So what we had asked your Honor for, because we didn't know about it until that day which I think counsel conceded anyhow, we asked for an opportunity to crunch the numbers because it was kind of a big math problem portrayed by the order.

I did have an opportunity to look into it. Obviously it's been a few weeks since we've been before you, but what counsel just said is a number starting with 800,000-something. The document that I was handed in court that day we were all together was 783,000 and some change.

So I'm not really sure what they're asking for because now I don't even have in front

of me something that represents what counsel just said.

So if there's a different order or a different number, I haven't seen it. I'd be happy to do the same review that I did the last time and I am only prepared to respond to what was handed to me in court last time, not this new number I am hearing for the first time today.

So if counsel wanted to send me the new document that she's referencing or the new number that she's referencing, I can make quick work of looking at it, but I can't respond to it having just heard it for the first time.

MS. STANISH: I have no issue sending him the document, Judge, but what I don't want happening is this lingering, again, for another month. It didn't get --

THE COURT: I'll see you all tomorrow. Folks, I'll see you all tomorrow on that issue.

MS. STANISH: Okay. Thank you. We'll send him the document.

The next --

THE COURT: Just so we're clear, so Jamie, kind of keep track of this.

So tomorrow if you're all able at 9:00 or 10:00 just to deal with the entry of this order and if there's no problem with it, you can send me an email by the end of today and say there's no problem with it, no one is going to show up. We're going to need a hearing date on Mr. Heftman's Motion to Quash.

Okay. What's the next issue?

MR. HEFTMAN: Judge, just to close the loop on that for scheduling purposes, I can appear tomorrow on Zoom at 10:00 a.m. --

THE COURT: Okay.

MR. HEFTMAN: -- that's just fine and it would be better if we have an opportunity to appear because it's a large judgment that they're asking be entered against Mr. Ivankovich. And so I'd like to just make a record of our --

THE COURT: Sure.

MR. HEFTMAN: -- opinion of it, which I am sure you understand.

THE COURT: Sure.

MR. HEFTMAN: Thank you.

THE COURT: So tomorrow is the 7th, right?

MR. HEFTMAN: Correct.

THE COURT: Okay. All right. Next?

MS. STANISH: Next, Judge, along the same lines, we had asked for an order to be entered that we can have the body attachments which are outstanding against Mr. Ivankovich registered with the National Crime Information Center, which is the nationwide facility for registering those body attachments that, in the event that Mr. Ivankovich is picked up, not only in Illinois, but any other state to which he wants to set foot into, that he will be registered with the National Crime Information Center.

Counsel, I believe it was Mr. Wittenberg at the time voiced some objection to that on-the-spot request saying he needed time to research it and look into it and didn't know anything about it.

We have not heard back from them with

regard to any research information or counter points that they wanted to make. So we're asking for that order to be entered as well.

MR WITTENBERG: Judge, if I recall -- I think if you recall from the last court date when we were there I said I was going to look into this.

The Court said I could just show up on the next court date and advise the Court what I found. In fact, I don't even remember Ms. Stanish pointing out that once I did walk in and express our position, provided I had one and I could have a basis for it, she may or may not have asked for additional either time to brief it or whatever. I vividly remember that discussion. We did look into it. There is case law on -- not in Illinois, but in other states that address this issue.

Illinois is silent on the issue. I would begin with the point that it is not -- when you walk into court and you ask for this type of relief, you don't just make an oral motion. What you do is -- this is substantial relief, significant relief, that puts somebody's liberty

at -- in jeopardy in other states.

I did do the research. For example, the Attorney General of South Carolina wrote an opinion for the entire state. And what he wrote in that opinion was that the primary purpose of the NCIC and the state's criminal information and communication is to collect and disseminate "criminal history record information for criminal justice purposes as defined by federal and SLED regulations, a civil contempt citation is not a matter that advances or relates to the enforcement of the criminal laws of this state.

Therefore, it is the opinion of this office, being the Attorney General's office, that citations for civil contempt would not constitute "criminal history record information" for purposes of being entered into the state's criminal information and communication system for NCIC databases."

The state of Oregon has similarly found that civil contempt citations do not belong in the NCIC database.

Because of our findings in this regard, if counsel now wants to -- and, Judge, I would draw a distinction, even though obviously we would never have objected to the -- let me rephrase it.

Obviously, although we never would have agreed to the renewal of the body attachments that counsel had asked for on a previous date.

When you had directed us to go look at the law and determine whether or not we were going to all come back to court and raise the issue that there was a legitimate legal basis to object, although we could not agree to the renewal, we did not force the issue because when we looked at the law, we recognized that this Court had a right, based on the facts and circumstances at the time, that it would not have been proper and we couldn't put forth a proper argument against the renewal of that.

This is very different. The only law we've been able to find in the United States suggests that civil contempt citations, including the one in Oregon which related to child support,

do not belong in the NCIC database.

And when you have a state Attorney General outlining in detail why it's inappropriate to include it in such a database.

I think we need to be very cautious and not just do this on somebody walking up with an order and saying please enter it.

I think you need to go through normal due process protocols where there's a motion filed, we can brief it. If the Court decides that, for example, the case law that we are going to present and have found is not persuasive, then that will be your decision.

But understanding that there is this case law, not just in one state, but -- or should I say this law, not just in one state, but in other states, I think we'd be remiss not to go through those normal channels.

MS. STANISH: So briefly, Judge, number one is, as you heard Mr. Wittenberg say, he does not have any Illinois case law which prohibits this.

Number two; time, expense, money,

everything -- so I made the request months ago, here we are months later. Mr. Wittenberg, sure, I said bring the information to Court. He didn't want to alert me to anything in advance, that's fine. I set myself up for that.

However, he has brought nothing to court. He has brought nothing from Illinois. He's brought nothing which is binding upon your Honor. He's brought nothing.

Instead what he brings to you is time, expense, more money. So now he wants a briefing schedule. Now he wants us to all pay for that, something we're not getting paid for, he is.

Everything is about delay. Everything is about taking time from the Court. Everything is about briefing and trying to undo things that this Court can do, I think, without the briefing necessary.

So my client now, just so we're clear, is three years without support. Three years. We've hit the anniversary here. We're about to hit that anniversary.

So now what he wants to do is add months onto that timetable because of justice for his client.

Where is this Court going to give justice to my client? Mr. Ivankovich travels freely around the United States and other countries throughout the world freely ignoring his child support obligations for three years and he wants time to brief it.

Enough is enough.

MR. WITTENBERG: Judge, in response, I don't want anything. Counsel says that I want all this relief. I am not the one asking for any relief.

It's counsel that came before this Court on an oral motion and essentially handed us an order that said she wants this type of relief.

She set the parameters by which this process was going to occur. I walked into court, and the reason I don't have Illinois law is there is no Illinois law.

If she wants the relief, the burden is on her to present to this Court authority under

which you could do what she's asking you to do.

What she's essentially arguing is that because I can't prove a negative, that you don't have the authority to do it, therefore she's entitled to it.

And, again, considering the fact that I did bring authority from other states, and this is a federal statute which makes it even more relevant.

Meaning, it's not like I brought authority from other states where they were interpreting their own laws.

These are state Attorney Generals interpreting a federal provision that is the same federal provision that counsel is asking you to apply.

And you have multiple jurisdictions saying it doesn't. Civil contempt citations, even ones that relate to child support, do not belong in this database.

Again, I'm not asking for the relief. Counsel is. It's her burden to provide you the

authority for the relief she's seeking, not my burden in an oral motion to explain to you why you don't have the authority. Thank you.

THE COURT: Okay. Counsel, Ms. Stanish, I know we've talked about this before.

Ms. Ivankovich, you cannot provide chats. Please don't do that.

Ms. Stanish is counsel. She will provide arguments on our behalf. So I can't have you posting a chat with respect to these proceedings. It would be similar to you just speaking out in open court, which my deputy would not allow.

Ms. Stanish?

MS. STANISH: Judge, again, I -- I have the authority of the sheriff's office who were the ones that recommended this process to us. I have nothing which tells us that this process is not available --

MR. FIELD: Objection. Hearsay.

MS. STANISH: -- by Ms. Ivankovich --

THE COURT: I heard you. I understand.

MS. STANISH: I have nothing to tell this process is not available to Ms. Ivankovich. So if the process is not available to Ms. Ivankovich, then she'll get stopped when she tries to submit these for registry to the NCIC. That's the issue.

I don't have the obligation to prove that I have a right to collect child support to whatever process is available to her.

This Court can enter an order allowing for the registry in the program. If she gets stopped by the program itself, she gets stopped by the program itself. They of all people will know if it can be registered or not.

That's all I need to do. I don't need to go and turn cartwheels in order to appease Mr. Wittenberg and his client who have sat here now with six lawyers on behalf of Mr. Ivankovich arguing why Mr. Ivankovich, again, should not be held accountable for not paying his child support and spousal support.

MR. WITTENBERG: Judge, under counsel's theory --

THE COURT: Okay. Enough. This is not the first time this issue has been brought by the suggestion of the Cook County Sheriff's Office in cases similar to this.

And orders have been entered and what will happen, will happen with respect to the National Crime Information Center.

MR. WITTENBERG: Judge, we're in status today.

THE COURT: No. Counsel.

MR. WITTENBERG: Look, we are at a hearing.

THE COURT: No. I am entering the -- put the body attachments in there. Whatever happens, happens.

If they are rejected and the information is incorrect in the center, send it back saying this doesn't fit with our protocol, then we'll -- we'll have that answer.

If they accept it, they accept. Let's move on. What's the next issue.

MR. WITTENBERG: Then I would ask --

THE COURT: Counsel --

MR. WITTENBERG: I'm not asking you to

reconsidering your ruling. I am asking you that we have a protocol by which it's submitted because I want to see what's getting submitted to --

THE COURT: The only thing that can be submitted is the actual body attachment itself.

MR. WITTENBERG: Judge, my guess, knowing the NCIC from what I've looked at, is they are going to require certain documents to be filled out.

If your order is all they are entitled to do is part of this process is hand them your order or your body attachment, that's one thing.

My strong supposition is that what's going to happen is they are going to fill out documents that are going to have certain questions and certain answers. And I think if -- before we allow somebody to go into the system and just fill things in as they believe it's appropriate, we should have a right to review what's being filled out and what's being submitted.

If your order is simply she can simply take the piece of paper that's already in place and hand it to them, and whatever they do with it,

they do with it, that's one thing.

But if you're going to allow them to couch things or spin things how they want to communicate it to the NCIC, that's a different story.

MS. STANISH: So, Judge, we will fill out whatever paperwork is necessary to complete the process.

We will do it with our ethical rules in mind as to what we're spinning to the NCIC. We will offer a copy of whatever we have to submit to counsel so that they can have transparency, a word that they should know about. We will offer all that on our side of the equation.

THE COURT: Okay. Include it in the order. Okay. Hold on one second. Off the record.

(Discussion off the record.)

THE COURT: Okay. Thanks. Back to Ivankovich.

MS. STANISH: Judge, the next issue I think just an update on discovery compliance. You had entered an order which required the parties to

STATE OF ILLINOIS )
) SS:
COUNTY OF COOK )

I, MICHELLE B. ENGLER-BROOKS, a CERTIFIED SHORTHAND REPORTER of the State of Illinois and County of Cook, do hereby certify that on the 6th day of November of 2024, I reported in shorthand the Zoom videoconferencing court proceedings had in the above-entitled cause, and that the foregoing is a true and correct transcript of said proceedings.

IN WITNESS WHEREOF, I do hereunto set my hand this 21st day of November, 2024.

Michelle B. Engler-Brooks, CSR
CSR License # 084-004576