# EXHIBIT 12

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
5/13/2025 10:58 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2021D009220
Calendar, C
32680475

Atty. No. 26828

FILED DATE: 5/13/2025 10:58 AM 2021D009220

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE: MARRIAGE OF | ) | |
| JEANETTE IVANKOVICH, | ) | |
| Petitioner | ) | |
| and | ) | No. 21 D 9220 |
| STEVEN IVANKOVICH | ) | |
| Respondent | ) | |
| ANTHONY IVANKOVICH, et al. Third-Party Respondents. | ) | |

**EMERGENCY *EX-PARTE* PETITION FOR APPOINTMENT OF RECEIVER AND/OR SEQUESTRATOR**

NOW COMES the Petitioner, Jeanette Ivankovich ("Jeanette"), by and through her counsel, SCHILLER DUCANTO & FLECK LLP, and pursuant to Sections 501 and 503 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/501and 5/503), and Section 2-415 of the Illinois Code of Civil Procedure, petitions this Honorable Court for the appointment of a Receiver and/or Sequestrator. In support of her Petition, Jeanette states as follows:

**EMERGENCY BASIS**

A. Jeanette has waited **over three (3) years** since the date of filing her Petition for Dissolution of Marriage to receive a divorce, her assets and even spousal and child support from the Respondent, Steven Ivankovich ("Steven").

B. Steven is currently being held in Monroe County, Florida relating to two body attachments from these proceedings: one for outstanding child and spousal support in the amount of



#10557313v2

FILED DATE: 5/13/2025 10:58 AM 2021D009220

$999,293.507 through May 12, 2025 (including accrued interest)[1]; and one for failure to pay interim attorney and expert fees and costs on Jeanette's behalf in the amount of $425,000[2].

C. Meanwhile, Steven has paid his personal divorce lawyers in these same proceedings the total sum of $1,550,227.53 through April 30, 2025. This sum does not include the attorney fees and costs paid on behalf of the Third-Party Respondents in this matter, or to the attorneys representing Steven in the various other proceedings in Florida and the Northern District of Illinois.

D. Steven has a long history before Judges Powers, Flannigan, and Scannicchio of disobeying and ignoring court orders, failing to appear in court, refusing to pay support and interim fees, lying to the tribunal and falsifying information.

E. On December 19, 2024, Judge Ellen Flannigan entered a scathing Memorandum Opinion and Order against Steven and his then counsel, the Beermann law firm, ordering Steven to pay Jeanette $350,000 in attorney's fees as sanctions for his improper conduct under 750 ILCS 5/508 and $70,000 in fines for Rule 137 sanctions; and ordered Thomas Field of the Beermann firm to pay $70,000 in Rule 137 sanctions to Jeanette. Mr. Field paid his fine; Steven did not. A Petition for Rule is pending, the Rule having issued previously by Judge Arce. These are separate and apart from the $425,000 interim fees that Steven also failed to pay and for which a prior body attachment issued. A copy of Judge Flannigan's

[1] $672,559.41 of this amount is addressed in the May 8, 2024 Body Attachment. On December 5, 2024, the court memorialized the accrued balance as of that date in a Judgment Order. At that time, the amount owed including interest was $835,434.29.

[2] Body attachment entered September 5, 2023, renewed Sept 13, 2024.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

December 19, 2024 Memorandum Opinion and Order is attached hereto as **Exhibit A**.

F. Steven falsely cries poor to the Court and the Judges while living the life of a multi-millionaire. He has luxury residences in Illinois (Trump Tower), Florida (Islamorada), Colorado, Dubai UAE, and Monaco. He claims not to have a job but is the managing member of active LLCs (controlling multi-millions of dollars), has signatory authority on bank and investment accounts and has access to funds through the LLCs and use of credit cards held in his father, Anthony Ivankovich's, name.

G. Judge Powers conducted evidentiary hearings on support and interim attorney fees and entered orders substantiating the wealth and access to funds under Steven's control. A copy of the November 6, 2023 support order entered by Judge Powers is attached hereto as **Exhibit B**. A copy of the March 12, 2024, preliminary injunction order is attached hereto as **Exhibit C**.

H. Jeanette (and Schiller DuCanto & Fleck LLP, in part) has borne the brunt of six lawsuits being filed against her or in conjunction with this dissolution proceeding at the behest of Steven and/or the LLCs he controls, including a pending bankruptcy proceeding in Florida. Steven, as the manager of three LLCs, filed bankruptcy to thwart Jeanette from receiving the support and fees ordered by this Court.

I. Jeanette and the children, having little to no access to resources and no court ordered support from Steven had to succumb in early 2024 to filing for and receiving government support through SNAP to feed themselves. Most recently, Jeanette has been living on the $70,000 in Rule 137 sanctions fines paid by Thomas Field to her to feed and clothe her children, but those funds are dwindling rapidly.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

J. On July 11, 2024, Judge Patrick Powers described Jeanette's current circumstances as a "tragedy", stating on the record "I have never seen anything like this. I have been practicing law since 1987. I have been a judge for eight years. I have never seen somebody take such action to avoid paying for food for their children. I have never seen it." Transcript of Proceedings before Hon. Patrick Powers dated July 11, 2024 at 61 (line 15), *Id.* at 69 (lines 15-19).

K. The tragedy continues. Rather than pay the cash bond to release himself from the Monroe County, Florida jail, Steven has chosen to file habeas motions (which were denied) and challenge extradition. Steven has a never-ending supply of funds to pay his lawyers to do all his legal work. His modus operandi is to starve his family quite literally, handsomely pay his bevy of lawyers and do everything and anything to not pay Jeanette or Jeanette's attorneys, including choosing to sit in jail rather than obey court orders and body attachments. Jeanette's attorneys are owed over $2 million and have not been paid in three years.

L. The Third-Party Respondents, including Steven's parents and the handful of LLCs added to this matter – all represented by separate, well-paid counsel, act in concert with Steven and have signed onto a "Joint Defense Agreement" to rally against Jeanette. This grotesque action shows that Steven and those enmeshed in the "Joint Defense Agreement" have no interest in complying with this Court's outstanding orders or pleas for decency.

M. This is an emergency because Jeanette's and the children's circumstances become more dire by the day. Steven, even while he sits in jail in Florida, adds more lawyers, lawsuits and legal briefs as time goes on, flaunting his financial ability to march on with never

FILED DATE: 5/13/2025 10:58 AM 2021D009220

ending litigation while evading and then challenging body attachments. Unless this Court takes appropriate and warranted relief, as requested herein, this tragedy will continue.

## BASIS FOR *EX PARTE* RELIEF

**N.** This matter should be heard on an emergent, *ex parte* basis because if Steven, his parents, or any of the LLCs receive notice, they will take further action to do what Steven does: employ every trick in the book to prevent Jeanette from obtaining access to support, fees, and marital assets.

**O.** During the past six months, the newly added Third-Party Respondent LLCs, have systematically and consistently filed substitution of judge requests and have successfully ousted Judge Scannicchio, Judge Bowes and Judge Arce. Movement in this case is stymied because of their tactics. With notice, they will continue to do the same. Jeanette has not been able to get discovery motions heard, fees requests adjudicated, or any other ordinary task completed. Most relevant to this Emergency Petition, Jeanette has already filed two Third-Party Complaints against Steven and the various Third-Party Respondents for fraud against the marital estate, fraudulent conveyance, and other misconduct arising from the improper use of millions of the dollars belonging to the marital estate. Both Third-Party Complaints were filed on August 13, 2024, and have yet to be heard by any domestic relations Judge because of the constant delay-tactics employed by Steven and the dozens of "Joint Defense Agreement" attorneys working for him.

**P.** Most recently, one of the third-party LLCs waited until just days before hearing dates long set in front of Judge Arce to pull their substitution of judge request, causing another delay

FILED DATE: 5/13/2025 10:58 AM 2021D009220

in these proceedings. This matter was then assigned to Judge Boyd on or about May 7, 2025.

**Q.** Aside from refusing to pay a dime of court ordered support to Jeanette, nothing is more telling of Steven's intent to secretly hide the multi-millions under his control than the following: After failing and refusing to supply discovery, Steven – in the middle of sanctions hearings before Judge Scannicchio in 2024 – for the first time produced a document allegedly signed in December 2022, during these divorce proceedings, giving all of his membership interests in LLCs and all of his current and future rights to any income or distributions from those LLCs to a trust for the benefit of his parents. Yes, that's correct: Steve produced a document allegedly assigning over $100 million of assets to his parents in the middle of this divorce! A copy of the Contribution Pledge and Security Agreement dated December 7, 2022 is attached hereto as **Exhibit D**.

**R.** Even before the Contribution Pledge and Security Agreement was known, Judge Powers made the following observation of Steven: "Mr. Ivankovich has the ability to shift other monies around. He does it all the time anyway." Transcript of Proceedings before Hon. Patrick Powers dated July 11, 2024 at 70 (lines 16-17).

**S.** In fact, during the course of these proceedings from approximately 2023-24, as the manager and/or member of four LLCs with accounts held at Celadon financial institution, Steven moved over $64 million in funds ***while the divorce case was pending and has yet to account for the money despite a court order requiring him to do so.*** *See* Exhibit C.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

**T.** The four LLCs holding funds at Celadon filed for bankruptcy in the Southern District of Florida in June 2024 – despite being solvent entities holding multi-millions of dollars in liquid funds. Steven acts as manager of three of those LLCs – unpaid, according to Steven.

**U.** When the failure to account for the missing $64 million was mentioned in divorce court, his counsel stated that Jeanette had not filed a Petition for Rule compelling his compliance, wanting to waste more time and money while his lawyers get handsomely paid. Steven and his lawyers benefit from delays and enforcement motions, knowing in the end that the effort to gain compliance only results in Steven refusing to follow the contempt orders and evading body attachments.

**V.** Giving notice of the instant Petition will only allow Steven, his parents and the LLCs to further evade orders, delay the process, and motivate Steven to entangle and hide marital assets from Jeanette. It is time that this Court take active intervention and begin to untangle the complicated web Steven has made of the marital estate. To do so, this Court should appoint a Receiver and Sequestrator.

**BACKGROUND**

1. The parties were married on April 29, 2006, in Cook County, Illinois, where said marriage is registered. On October 22, 2021, Jeanette filed her Petition for Dissolution of Marriage in Cook County, Illinois, which remains pending and undetermined.

2. Since the filing of the Petition for Dissolution of Marriage, Steven has repeatedly demonstrated he believes that court orders are inapplicable to him. By way of example, but not limitation, Steven has failed to appear at approximately four (4) hearings on his own motion(s), produce the requisite documents per discovery orders, pay support, and pay the necessary fees and costs to Jeanette and her counsel as ordered by this Court.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

3. In short, Steven owes Jeanette approximately $999,293.50 in unpaid child support and maintenance arrearages[3] (including interest) and $425,000 for attorneys' and experts' fees and costs (total approximately $1,424,293.50).

4. On May 18, 2023, an Interim Fee Order was entered which required Steven to pay Schiller DuCanto & Fleck LLP Four Hundred Thousand Dollars ($400,000) and Twenty-five Thousand Dollars ($25,000) for the appointment of a forensic accounting expert within 45 days (by July 3, 2023).

5. On July 6, 2023, Jeanette filed her Verified Petition for Rule to Show Cause and for Adjudication of Indirect Civil Contempt for Violation of the May 18, 2023 Interim Fee Award Order.

6. On August 28, 2023, Jeanette filed an Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and for Other Relief.

7. On September 5, 2023, Jeanette filed an Ex-Parte Emergency Supplement to Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and for Other Relief.

8. On September 6, 2023, the Honorable Judge Powers issued a body attachment against Steven in connection with his failure to comply with the May 18, 2023 Interim Fee Award.

9. On September 14, 2023, a temporary restraining order was issued against Steven (and anyone acting in his direction) enjoining him from dissipating, destroying, or otherwise disposing of certain assets held at Celadon Financial Group LLC[4] except in the usual course of business with certain notice provisions to Jeanette.

10. On November 6, 2023, this Court entered an Order requiring Steven to pay Jeanette

---

[3] Steven, or allegedly someone on Steven's behalf, has paid Beermann LLP and Dussias Wittenberg Koenigsberger collectively over $1.5 million in attorneys' fees and costs while he has paid $0 toward Jeanette's court ordered child support, maintenance and attorneys' fees.

[4] Specifically, Account #1441 titled in the name of A&O Family LLC, Account #1442 titled in the name of Ivankovich Family LLC, Account #1443 titled in the name of P2 Portfolio Managing Member LLC, and Account #1444 titled in the name of A&O Family LLC.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

$6,933 per month as and for child support and $14,180 per month as and for temporary maintenance. Additionally, the November 6, 2023 Order required Steven to pay Jeanette a lump sum of $506,712 for retroactive support (back to the date of filing of Jeanette's Petition for Temporary Support) within 21 days. A true and correct copy of the November 6, 2023 Order is attached hereto and incorporated herein as **Exhibit B**.

11. Despite being ordered to do so, Steven once again refused to pay a penny for Jeanette and the minor children's support. On December 14, 2023, Jeanette filed a Petition for Rule to Show Cause and Adjudication of Indirect Civil Contempt for violation of the November 6, 2023 Order. A hearing was set on May 8, 2024, and Steven's attendance was required. However, Steven once again showed his disregard for this Court's rulings, and chose to not participate in the May 8, 2024, hearing. The Court therefore entered an additional Body Attachment Order against Steven for his failure to appear in Court on May 8, 2024.

12. To date, Steven has failed to pay Jeanette **any** court ordered child support or maintenance. He is currently being held in the Monroe County, Florida jail on the two Body Attachments relating to his failure to pay support and fees and to appear in court.

13. On November 6, 2023, an order was entered which stated that the September 14, 2023 temporary restraining order "shall remain in full force and effect until the entry of a final order resolving Jeanette's Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and Other Relief and *Ex. Parte* Supplement Thereto."

14. On December 6, 2023, Steven filed a Motion to Reconsider and Clarify November 6, 2023 Temporary Order.

15. On February 21, 2024, Judge Powers denied Steven's Motion to Reconsider and Clarify November 6, 2023 Temporary Order (except for the modification of one date) and made the following findings:

a. "[Steven] has…many interests in various LLCs…He claims that his parents own and operate the various business[es] but based upon the testimony

FILED DATE: 5/13/2025 10:58 AM 2021D009220

of the parents of Mr. Steven Ivankovich, the Court does not believe that they have the physical and/or mental capacity to operate these various LL[C]s." ROP at page 5.

b. "This Court believes that [Steven] is actually operating these companies, these LLCs and businesses and will continue to do so." ROP at page 6.

c. "…it is crystal clear to this Court that the parties—both the parties—during the marriage lived a lifestyle that can only be described as [a] lifestyle of the rich and famous. Steven continues to life this lifestyle while Ms. Ivankovich and the children do not have the type of lifestyle of Steven Ivankovich. It's not even close." ROP at page 6.

d. "…. guideline calculations cannot be determined based upon Steven's refusal to provide the financial documentation and all sources of income." ROP at page 8.

e. "The Court has also found Steven Ivankovich in his prior testimony not to be a credible witness." ROP at page 10.

f. "…various monies from the LLC[s] have been transferred where Steven had access to fund his lifestyle." ROP at page 10.

g. "[Steven] has chosen to attempt to starve out the children." ROP at page 10.

h. "These LLCs are being controlled and operated by the direction of Steven Ivankovich and not his parents. Steven holds the purse strings to these LLCs." ROP at page 11.

i. "Steven will pay for what he wants to pay for." ROP at page 12.

j. "Based upon the testimony of the witnesses, the Court believes that these various LLCs are operated and controlled by Steven Ivankovich. He has 100% in the Ivankovich Family LLC, 80% in A & O, and 20% in P2." ROP at page 13.

A copy of the February 21, 2024 transcript is attached hereto as **Exhibit E**.

16. Effective May 23, 2024, a Preliminary Injunction was entered against Steven Ivankovich. The Preliminary Injunction, found, in relevant part, that A&O Family LLC, Ivankovich Family LLC, and P2 Portfolio Managing Member LLC were Steven's alter egos.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

17. On May 23, 2024, the LLCs served an Emergency Motion for Stay of Preliminary Injunction in this matter. Same was denied on May 30, 2024.

18. On May 23, 2024, the LLCs appealed the Preliminary Injunction to the First Judicial District in and for the Appellate Court of Illinois, Appellate Case Number 1-24-1118 (the "Appeal").

19. On June 5, 2024, after having been denied a stay in the Illinois Divorce Court, the LLCs filed an Emergency Motion for Stay of Preliminary Injunction in the Appellate Court of Illinois.

20. On June 10, 2024, the LLCs filed a bankruptcy action in the Southern District of Florida to prevent Jeanette from receiving child support, spousal support, and attorney fees from the assets of the LLCs. The appeal filed by the LLCs in this divorce case is stayed as a result.

21. ***For clarity and under an abundance of caution, Jeanette does NOT seek the appointment of a receiver for the LLCs that have filed bankruptcy in the Southern District of Florida, but instead for the various known and unknown assets outside of the purview of the bankruptcy court, of which there are many and millions in value***.

**UNDISCLOSED ASSETS**

22. Throughout this matter, Steven has wantonly failed to disclose numerous multi-million-dollar assets which are part of the marital estate.

23. For example, on his financial affidavit dated March 7, 2023, the only business interest Steven disclosed was his 93% membership interest in Overlook Managing Member (which he subsequently claimed was transferred to North American Property Ventures Ltd. for the benefit of his parents on December 7, 2022 under the Contribution Pledge and Security Agreement). Overlook Managing Member LLC, through other downstream LLCs, owns three apartment complexes in Texas worth at least $35 million, per the LLCs and Steven's bankruptcy counsels.

24. However, Steven failed to disclose numerous other multi-million-dollar assets (usually held by LLCs) based upon information obtained by Jeanette in these proceedings through subpoenas and public searches. By way of example, but not limitation, Steven failed to disclose his interest in:

FILED DATE: 5/13/2025 10:58 AM 2021D009220

a. Contessa Marine Research LLC, which owns the multi-million-dollar yacht - the Octopussy. Upon information and belief, Contessa Marine Research LLC also owns at least nine (9) other boats.

b. Ivankovich Family LLC, which has an investment account at Celadon worth in excess of $1 million at present and from which Steven transferred multi-millions during 2023-24. (This LLC is in bankruptcy and the information is provided as background only.)

c. A&O Family LLC (Florida), which has an investment account at Celadon presently worth in excess of $12.4 million, an account at Wells Fargo worth in excess of $1.4 million, an account at Stifel Nicolaus worth in excess of $400,000, and an account at RBC Capital Markets worth in excess of $13.7 million (total of over $27.9 million). (This LLC is in bankruptcy and the information is provided as background only.)

d. A&O Family LLC (Illinois), which has an investment account at Celadon presently worth in excess of $880,000. (This LLC is in bankruptcy and the information is provided as background only.)

e. P2 Portfolio Managing Member LLC, which has an investment account at Celadon presently worth in excess of $7 million.

f. Old Town Property Ventures LLC, which owns 233 W. Menomonee Street Chicago, Illinois (the property next door to the marital residence) which Steven contracted to purchase on or about September 6, 2022. The purchase price of 233 W. Menomonee was approximately $1,410,000.

g. Although Steven did disclose his 93% interest in Overlook Managing Member LLC which owns three (3) apartment rental buildings in Texas on his financial affidavit, Steven had not disclosed that during the marriage and in the midst of the divorce in 2022, Overlook Managing Member LLC sold two (2) apartment rental buildings in Florida for a net profit in excess of $35 million.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

h. Downtown Property Ventures LLC, which owns Unit 55A and Parking Space P204 in Trump Tower (401 N Wabash Chicago, Illinois 60611). Steven contracted to purchase this property on or about November 23, 2022 and placed it into the LLC at closing. The purchasing price of Unit 55A and Parking Space P204 was approximately $1,775,000.

i. IMG Marine.

j. Ivanmorr which, upon information and belief, owns property in the Dominican Republic.

k. Real property in Dubai, Monaco and Colorado.

l. Atlas Apartment Homes LLC, which is a management company incorporated in Illinois that manages the Texas apartment complexes, among other properties, upon information and belief.

m. Glencoe Family Dwelling LLC.

n. North American Property Ventures Ltd.

**FRAUDULENT TRANSFERS**

25. Prior to the commencement of the breakdown of the marriage in 2019, the marital estate had substantial assets. However, on August 31, 2022, Steven testified[5] before Judge Sharon Coleman in US District Court that from August 2020 until the end of 2021 (when Jeanette filed her Petition for Dissolution of Marriage), his personal net worth went from approximately $55,367,404 to $0.

26. Steven further testified before Judge Coleman that his personal net worth was utilized to pay obligations, capital calls, and expenses of LLCs in which he had an interest. He could not identify with specificity what money went where and for what purpose.

27. Steven's net worth dwindling to zero was not a result of his good-faith efforts to pay obligations and costs associated with his businesses. Rather, Steven fraudulently transferred almost all

[5] Steven testified in the United States District Court for the Northern District of Illinois in *Zhu Zhai Holdings, Ltd. v. Ivankovich* (1:2020 CV 04985) (N.D. ILL).. *See* Record of Proceeding Before Honorable Sharon Johnson Coleman dated August 31, 2022 at 58 (lines 23-25); *Id*. at 59 (line 1).

FILED DATE: 5/13/2025 10:58 AM 2021D009220

the marital assets to "Atlas World" LLCs to evade his creditors, evade paying support, and to eviscerate Jeanette of her marital property rights.

28. Upon information and belief based upon public searches and subpoena responses from financial institutions, from approximately 2013 to present, Steven has been the manager and/or managing member of no less than seventy (70) LLCs, including but not limited to, (1) Ivankovich Family LLC, (2) A & O Family LLC (Illinois and Florida); (3) P2 Portfolio Managing Member LLC; (4) Glencoe Family Dwelling LLC; (5) Overlook Managing Member LLC; (5) Atlas Apartment Homes LLC; and (6) Contessa Marine Research LLC. Despite Steven's involvement in these LLCS, the public documents supporting his involvement typically as manager and verifying his membership interests, Steven and his counsel have repeatedly, in bad faith, stated to the domestic relations judges varying stories including, but not limited to, claiming that Steven is "not a member of any LLC", is "unemployed", is "not paid for his work", does "not have income" and lives from "gifts or loans" from his parents.

29. Yet, by Steven's own testimony, in 2020-21 during the marriage and on the eve of divorce proceedings commencing, Steven claims he used all of his $11 million in marital liquidity to pay capital calls for "all of the [LLCs] in the Atlas world."[6] Steven has produced no records to date to substantiate this statement.

30. Then in late 2022 – approximately one year into the divorce proceedings, on paper, Steven purportedly transferred his membership interests in numerous LLCs to his parents, Anthony and Olga, and/or an entity acting on their behalf. These LLCs include but are not limited to (1) Glencoe Family Dwelling LLC; (2) Overlook Managing Member LLC; (3) Contessa Marine Research LLC, and (4) Atlas Apartment Homes LLC. *See* Contribution Pledge and Security Agreement, Exhibit D.

31. Steven did so with the explicit intent of defrauding Jeanette. Of course, Steven provided

[6] *See* Record of Proceeding Before Honorable Sharon Johnson Coleman dated August 31, 2022 at 63 (line 16).

FILED DATE: 5/13/2025 10:58 AM 2021D009220

no notice to Jeanette that he was transferring martial property "to his parents" and in fact secreted the "transfer document" from Jeanette for over 18 months, failing to produce it in discovery until his lawyers attached it to a response to a sanctions motion for the first time.

32. As stated, on or about June 3, 2024, in response to a Motion for Sanctions, Steven produced (for the first time) a "Contribution Pledge and Security Agreement" allegedly executed by Steven on December 7, 2022 – one year into the divorce process.

33. The Contribution Pledge and Security Agreement states, in relevant part:

> "WHEREAS [Steven Ivankovich] through this Contribution and Pledge Agreement desires to contribute ***any membership interest that he now owns or ever owned***, and all right to any distribution under the respective operating agreements of the limited liability companies to [North American Property Ventures Ltd.]; and
>
> WHEREAS [Steven Ivankovich] also agreed through this Contribution and Pledge Agreement to pledge and assign ***any limited liability membership interest or right to a membership distribution*** that he may in the future be entitled to receive or does receive, to the Ivanko Trust;
>
> ***
>
> WHEREAS The contribution is made by Steven Ivankovich to the Beneficiary rather than to Dr. Anthony and Olga Ivankovich for estate planning purposes; and
>
> WHEREAS The parties agree that the consideration for the transfers made pursuant to this Agreement are for fair and adequate consideration;
>
> ***
>
> WHEREAS [North American Property Ventures Ltd.] shall hold the membership interests in Trust for Dr. Anthony Ivankovich and Dr. Olga Ivankovich and any estate planning or trusts created by them; and…"

34. According to the Contribution Pledge and Security Agreement, the description of the pledged securities are as follows:

| **Issuer** | **Owner** | **Percentage of Partnership/ Membership Interests** |
|---|---|---|
| Ivankovich Family LLC | Steven Ivankovich | 100% |
| A&O Family LLC | Steven Ivankovich | 1.25% |
| A&O Family 2 LLC | Steven Ivankovich | 100% |
| Overlook Managing Member LLC | Steven Ivankovich | 93% |

FILED DATE: 5/13/2025 10:58 AM 2021D009220

| | | |
|---|---|---|
| Alliance HTFL | Pilgrim Forest Park LLC Pilgrim Caribbean Isle LLC | 100% |
| Township Orlando LLC | Steven Ivankovich | 20% |
| Alliance HTTX LLC | Pilgrim Owner Warwick LLC Pilgrim Owner Wind Tree LLC Pilgrim Owner Coulter LLC | 100% |
| P2 Portfolio Managing Member LLC | Atlas P2 Managing Member LLC | 100% |

*See* Contribution Pledge and Security Agreement dated December 7, 2022, Exhibit D.

35. Thus, Steven has allegedly[7] transferred not only all interests in any LLC he owned as of 2022, but any limited liability membership interest or right to a membership distribution that he may in the future be entitled to receive to North American Property Ventures Ltd. which document states is for the benefit of and controlled by his parents, Anthony and Olga.

36. This transfer includes every marital business interest he had or was entitled to after December 7, 2022, including but not limited to, Atlas Apartment Homes LLC, Downtown Property Ventures LLC, Old Town Property Ventures LLC, North American Condominium Solutions LLC, Overlook Managing Member LLC, Township Orlando LLC, and Contessa Marine Research LLC (collectively known as the "Transferred Entities" or "the LLCs").

**MISMANAGEMENT OF BUSINESSES**

37. On or about June 10, 2024[8], Ivankovich Family LLC, A&O Family LLC (Illinois), A&O Family LLC (Illinois), and Atlas P2 Managing Member LLC filed for Chapter 11 bankruptcy in the Southern District of Florida (Case Nos. 24-15755-LMI; 24-15762-LMI; 24-1567-LMI; 24-157770-LMI).

38. Steven is not a stranger to lawsuits either filed by him or against him.

---

[7] However, Jeanette maintains her position that Steven is the sole shareholder and director of North American Property Ventures LTD and same is not for the benefit nor in the control of Drs. Anthony and Olga Ivankovich.
[8] Five (5) days after the Ivankovich Family LLC, A&O Family LLC, and P2 Portfolio Managing Member LLC's emergency request to stay the First Preliminary Injunction was denied.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

39. Steven, personally, and/or businesses he controls are involved in no less than five (5) lawsuits. By way of example, but not limitation, Steven and/or businesses in his control are involved in the following lawsuits:

a. Starboard Yacht Group LLC vs M/V Octopussy et al (28:1333 Admiralty) which is pending in the U.S. District Court for the Southern District of Florida. In this case, Starboard Yacht Group alleges that Contessa Marine Research failed to pay Starboard Yacht Group millions of dollars for its work on renovating the Octopussy. According to Starboard, Steven represented himself to be the owner of Contessa Marine Research.

b. P-5 GRA LLC vs. Steven Ivankovich and Overlook Managing Member LLC (2023-1182) which is pending in the Chancery Court in the State of Delaware. In this case, P-5 (the minority member in Overlook Managing Member) is suing Steven and Overlook Managing Member for distributing **$30 million** to A&O Family LLC, an LLC controlled and for the benefit of the Ivankovich family from the sale of two (2) apartment buildings in Florida but not distributing the appropriate proceeds to P-5 GRA.

40. At the same time as Steven cries poor, he utilizes “business” funds to pay for his life of the rich and famous. Steven has spent time on his $3.5 Million mega yacht named the “Octopussy,” and spent the summer of 2023 galivanting in Monaco and France.

41. He has offered to take the children on numerous vacations to exotic locations, including to Iceland, where they would take a helicopter ride to see the volcanoes, Monaco, Hawaii and Colorado for skiing. Upon information and belief, Steven used and or directed funds from the LLCs to purchase a multi-million-dollar residence in Colorado in 2024 near his friend and business partner, Mark Brown.

42. On information and belief, Steven is also spending time in the Bahamas, Maldives, and

FILED DATE: 5/13/2025 10:58 AM 2021D009220

Dubai, returning at times to Florida (where he was arrested on April 28, 2025).

43. By way of example, but not limitation, between January 1, 2023 and July 31, 2023, Glencoe Family Dwelling LLC Chase Account #8261 paid approximately $815,000 in credit card bills – which were likely used by Steven, who has refused to turn over any evidence of his credit card usage, other than providing the credit card transactions of Jeanette. Steven, preposterously, wants the court to believe that he has no access to credit cards when nothing could be further from the truth.

44. Moreover, between January 1, 2023 and June 30, 2023, Chase Bank Account #6357 paid the Octopussy Crew Account approximately $276,000. See **Group Exhibit F.**

45. Steven has used funds from Chase Bank Account #3681 for yachting expenses. By way of example, but not limitation, on or about March 31, 2023, Steven transferred One Million Dollars to Starboard Yacht Group from Chase Bank Account #3681. A true and correct copy of Chase Bank Account #3681 statements dated December 31, 2022 through January 31, 2024 are attached hereto and incorporated herein by reference only as **Exhibit G.**

46. Steven has also used the LLC accounts to provide funds to his fiancée, his personal trainer, paying millions of dollars in legal fees to his various lawyers, and acquiring multiple residential properties. Specifically, Steven has used LLC funds to purchase two residences in Illinois, and well as properties in Colorado and overseas. Consistent with his established practice, Steven always titles the residences in the name of an LLC.

## TRANSFER OF MARITAL FUNDS TO OVERSEAS ACCOUNTS

47. Upon information and belief, Steven has an ownership interest in no less than twenty-four (24) business entities which have bank accounts at Chase Bank, and Chase records substantiate that he has signatory power over said accounts. It is Jeanette's position that Steven utilizes these business entities as his alter ego to evade his creditors. As a small but representative example of the transactions, the Chase Bank account records substantiate the following: (1) **Steven has transferred in excess of $10,000,000** from three (3) accounts (#6357, #8261, and #7298) to **international**

FILED DATE: 5/13/2025 10:58 AM 2021D009220

**locations (such as Russia, Ukraine, the United Arab Emirates, and the Dominican Republic) between January 1, 2023 and January 31, 2024.**

**TAX RETURNS**

48. According to Steven, he has not filed completed tax returns since at least 2020.

49. During these proceedings, Steven has been listed as the CEO and managing member of Atlas Residential or a/k/a Atlas Apartment Homes LLC on their website through sometime in 2024, has signed documents as the managing member in both Illinois and Florida, and has routinely accessed bank accounts of the management company for his own personal use, per the testimony of his property manager, Shana Willis, in the Northern District of Illinois proceeding. Atlas Residential changed its website in 2025, removing any reference to Steven as CEO but still stating as follows: “We are an Illinois-based real estate investment and property group with a focus on providing a pleasant living experience.” It continues to list its business address as “1 East Erie Street, Ste. 525 253, Chicago, IL 60611.” Yet, Steven claims he is not paid by the LLC and has not provided any paycheck or tax document.

50. As set forth above, Steven claims to have transferred his membership interests, worth in excess of $100 million, in various limited liability companies to North American Property Ventures Ltd. Yet, Steven has produced no supporting documents relating to such transfers, other than the Contribution Pledge Agreement: no tax documents, loan documents, LLC documents.

51. Additionally, according to the 2022 Consolidated Form 1099 for Ivankovich Family LLC (which is Steven’s alter ego) account #1442 at Celadon, it reported proceeds of $36,157,089.38 and net gains of $1,030,751.19. Steven – by his own admission in the Contribution Pledge Agreement and other documents such as the LLC Agreement – was 100% owner of Ivankovich Family LLC. To date, no documents have been produced by Steven such as the K-1 statement or a tax return showing the taxes paid on these monies.

52. Steven, as the 100% owner of Ivankovich Family LLC in 2022 before the alleged

FILED DATE: 5/13/2025 10:58 AM 2021D009220

transfer in December 2022 pursuant to the Contribution Pledge Agreement, was entitled to receive income and distributions from the LLC. No K-1 has been produced by Steven to either substantiate or refute his ownership interest, reported taxable income or distributions from the entity for any tax year.

53. Moreover, according to the 2022 Consolidated Form 1099 for A&O Family LLC (which is Steven's alter ego) account #1441 at Celadon, it reported proceeds of $85,218,604.62 and net gains of $1,629,992.40. To date, no documents have been produced by Steven such as his K-1 statements or tax returns showing the reported taxable income and taxes paid on these monies.

**PURPOSE OF A RECEIVER AND SEQUESTRATOR**

54. Due to Steven's inappropriate conduct to date and clear message that he will not follow court orders or statutory rules, the court should appoint a sequestrator or receiver.

55. A sequestration takes control of assets and manages them subject to court supervision during the pendency of the dissolution litigation, or sell assets for the enforcement of a judgment or order *See, Hellwig v. Hellwig*, 100 Ill. App. 3d 452, 467-68 (1st Dist. 1981).

56. The action of sequestration is used in dissolution cases when assets are being mismanaged or dissipated. The action seeks to have the court appoint a sequestrator, who takes control of the assets and manages them subject to court supervision during the pendency of the dissolution litigation. *See, Id.* at 468-69 (upholding appointment of sequestrator to protect assets from dissipation by the husband and ensure husband's payment of maintenance to the wife.

57. Sequestration can also be used to protect a party's interests where, for example, a party has violated court orders. *Ryan v. Ryan*, 56 Ill. App. 3d 483, 483-84 (1st Dist. 1978). ***Steven has violated almost every substantive order in this case***.

58. Alternatively, a receiver can be appointed pursuant to 735 ILCS 5/2-415.. A receiver is an indifferent person appointed to take possession and hold property for the benefit of the party ultimately entitled. A receiver acts to ensure that the property may be subjected to order or decree as the court may make. The appointment is warranted where there is no other adequate means to secure

FILED DATE: 5/13/2025 10:58 AM 2021D009220

the desired result. Steven has made it clear that court orders or statutory rules will not be followed, and he will continue to do as he pleases, causing financial damage that cannot be undone.

59. Courts have recognized the need to protect the status quo of financial assets in marital estates during the pendency of divorce proceedings. *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 336 (1st Dist. 2001). The Petersen court stated it was appropriate to maintain the status quo to prevent the "dissipation or destruction of the property in question." *Id.* at 337.

60. The principal purpose of appointing a receiver is to protect and preserve the property in issue for the benefit of all. *Heritage Pullman Bank v. American Nat. Bank and Trust Co. of Chicago*, 164 Ill. App. 3d 680, (1st Dist. 1987).

61. The various properties at issue as set forth above are clearly marital assets – even if Steven decided to give them away for his parents' benefit. As such, Jeanette is entitled to a share of these assets, and they must be factored into the ultimate division of property between the parties upon the entry of a Judgment for Dissolution of Marriage.

62. "Receivers are appointed because of present conditions and well-founded apprehensions respecting the future, which may be based on past conduct and past conditions." *See Schroeder v. Meier-Templeton Associates, Inc.*, 130 Ill. App. 3d 554, 561-62 ( 5th Dist. 1984).

63. Steven's behavior, including his well-documented willingness to deceive, including lying to this Court, evading court orders, being sanctioned as well as his failure to fully disclose information and records related to the parties' assets and income, are cause for apprehensions over what actions Steven will take, in order to once again line his own pockets at the expense of others, including his wife **and children**.

64. Further, a receiver acts to ensure that the property "may be subjected to such order or decree as the court may make." *First Fed. Sav. & Loan Ass'n of Chicago v. Nat'l Boulevard Bank of Chicago*, 104 Ill. App. 3d 1061, 1063 (1st Dist. 1982). The appointment is appropriate where "there is no other adequate means to secure the desired result." Prassas v. Thomas W. Prassas & Co., 102

FILED DATE: 5/13/2025 10:58 AM 2021D009220

Ill.App.3d 319, 322 (1st Dist. 1981).

65. The appointment of a receiver "is appropriate only when dissension, fraud, misconduct or mismanagement exist, which make it impossible for the business to continue or to preserve its assets." *Id.* at 321.

66. The right to a receivership "rests upon the rationale that the applicant has some clear right or lien upon the property for which the receiver is sought, . . . and that the possession of the property by the defendant was obtained by fraud, or that the property itself or income therefrom in in imminent danger of dissipation if the receiver is not appointed to maintain the status quo." *Stewart v. Susman*, 94 Ill.App.2d 471, 476 (2d Dist. 1968).

67. The appointment of a receiver is appropriate when it has been shown that a party has a right to an asset and there is a danger of loss or harm to that asset. *Bagdonas v. Liberty Land & Investment Co*., 309 Ill. 103, 110 (1923) ("The general rule is that the applicant must show, first, that he has a clear right to the property itself or has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim. . .").

68. The appointment of a receiver does not determine the rights of the contestant but determines only that the appointment is imperative to preserve the property for whoever may ultimately be held to be entitled thereto.

69. Jeanette clearly has a right to property that is under the exclusive control of Steven Ivankovich, individually or through an entity he controls. Steven's misconduct and mismanagement of property has been made abundantly clear. As such, the appointment of a receiver in this case is appropriate.

70. The appointment of a receiver in this case would ensure that the assets and income accumulated by the marital estate over the years are properly accounted for, that Steven is prevented from further mismanagement and dissipation of these assets, and that the assets are either preserved, or sold in an orderly liquidation or outright sale, and the proceeds are maintained for ultimate

FILED DATE: 5/13/2025 10:58 AM 2021D009220

distribution between the parties upon entry of a Judgment for Dissolution of Marriage.

71. Furthermore, as must either be liquidated or sold, the appointment of a Receiver will help preserve the estate, prevent Steven from further dissipating the assets, pay off any liabilities and help to account for all its assets.

72. In appointing a Receiver, the Court should define the duties to include the following[9]:

- Account for all assets, legal or equitable interest in any real or personal property of the marital estate, including those Steven has transferred, fraudulently or not, while under his control and/or ownership during the pendency of the divorce and secure the resulting assets for eventual distribution between the parties, whether situated or incorporated in Illinois or any other jurisdiction.
- Take exclusive control and possession of the assets for the benefit of the marital estate, including any affiliated entities, any bank, brokerage, investment and other accounts as well as real and personal property.
- Account for the historic and present income of every business entity managed, owned, or otherwise controlled by Steven during the marriage, whether situated or incorporated in Illinois or any other jurisdiction.
- Inventory all assets of every business entity managed, owned, or otherwise controlled by Steven during the marriage, including but not limited to Overlook, Contessa Marine Research LLC and Atlas Apartment Homes LLC.
- Arrange for the orderly liquidation or sale of every piece of real estate in the United States, including but not limited to, the known residences (three) in Illinois, the known commercial properties in Illinois (at least two) and the business entities managed,

[9] This request is related to all entities and assets except those within the control of the bankruptcy proceeding in the Southern District of Florida.

FILED DATE: 5/13/2025 10:58 AM 2021D009220

owned, or otherwise controlled by Steven during the marriage, whether situated in Illinois or any other jurisdiction.

- Arrange for the liquidation of personal property.
- Conduct expedited discovery.
- Satisfy all legitimate liabilities of Steven and every business entity managed, owned, or otherwise controlled by Steven during the marriage.
- Preserve the assets and/or proceeds of every business entity managed, owned, or otherwise controlled by Steven during the marriage for allocation between the parties upon entry of a Judgment for Dissolution of Marriage.
- Permit the receiver to employ other professionals to assist along the way.

73. Steven's flagrant abuse of the judicial system, the significant amount of unaccounted for funds, and Steven's mismanagement of his "businesses" as set forth above require the Court to appoint a receiver to preserve what is left for the marital estate.

74. Without this order, Jeanette will be irreparably harmed further. Steven will continue to hide and conceal assets, create more LLCs and attempt to hide or eviscerate the marital estate through litigation, bad investments and paying millions in attorney fees.

75. Jeanette's proposed order appointing a receiver and/or sequestrator is attached hereto as **Exhibit H**.

76. The biography of Jeanette's proposed receiver, Neal Levin, is attached hereto as **Exhibit I**. Among many other appointments, Mr. Levin has been appointed by Judge William Stewart Boyd and has appeared numerous times before Judge Ahern. The Court is welcome to verify Mr. Levin's credentials, integrity and relevant history as a receiver.

77. Section 2-415(a) requires that a bond be posted by the party seeking the appointment of a receiver, unless good cause is shown at a hearing. *Iowa Structures Unlimited, Inc. v. First Nat.*

FILED DATE: 5/13/2025 10:58 AM 2021D009220

*Bank of Moline*, 99 Ill. App.3d 80, 184 (3d Dist. 1981).

78. Jeanette lacks sufficient assets or income to post bond as is required by the statute. In fact, she barely has enough money to feed herself and the parties' minor children. She is currently receiving government assistance through the Supplemental Nutrition Assistance Program (formerly known as food stamps). Additionally, she has good cause as to why bond should be waived. Through Steven's mismanagement of funds and hiding of assets, he has prevented Jeanette from accessing any assets and liquidity from which money for a bond could have come; and thus, the bond requirement should be waived by the court.

79. As a result of Steven's misconduct and actions, Jeanette has incurred attorneys' fees for the preparation and presentation of this Petition, for which Steven should be responsible.

**WHEREFORE**, the Petitioner, JEANETTE IVANKOVICH, prays for the following relief:

A. For the entry of an Order appointing Neal Levin as Receiver in accordance with the proposed Order attached hereto as Exhibit H.

B. For the entry of an Order appointing Neal Levin as Receiver without bond, to take over management and operation of every business entity managed, owned, or otherwise controlled by Steven at any point during the marriage, except as prohibited by the automatic stay in bankruptcy;

C. For the entry of an Order appointing Neal Levin as Sequestrator, or another individual as Sequestrator, without bond, to manage, operate, and preserve any proceeds and any of the parties' assets encumbered by debts on which both parties are liable following Judgment for Dissolution of Marriage, except as prohibited by the automatic stay in bankruptcy;

D. For the entry of an Order authorizing the Receiver and/or Sequestrator, except as prohibited by the automatic stay in bankruptcy, to account for the historic and present income of every business entity managed, owned, or otherwise controlled by Steven at any point during the marriage; inventory all assets of every business entity managed, owned, or otherwise controlled by Steven at any point during the marriage; arrange for the orderly liquidation or sale of every business entity managed,

FILED DATE: 5/13/2025 10:58 AM 2021D009220

owned, or otherwise controlled by Steven at any point during the marriage; satisfy all legitimate liabilities of every business entity managed, owned, or otherwise controlled by Steven at any point during the marriage; account for all proceeds of any liquidation or sale; preserve the assets and/or proceeds of every business entity managed, owned, or otherwise controlled by Steven at any point during the marriage for allocation between the parties upon entry of a Judgment for Dissolution of Marriage;

E. For the entry of an Order allowing the Receiver and/or Sequestrator to take such steps as deemed reasonably prudent to accomplish his duties as set forth;

F. For the entry of an Order allowing the Receiver and/or Sequestrator to act in any jurisdiction where such appointment may be recognized accordingly;

G. For the entry of an Order requiring Steven to pay Jeanette's attorneys' fees and costs incurred for the preparation and presentation of this Motion;

H. For the entry of an Order requiring Steven to pay 100% of the retainer and ongoing fees necessary for the appointment of the Receiver and/or Sequestrator;

I. For the entry of an Order waiving Jeanette's requirement to post bond; and

J. For such other and further relief as this Honorable Court deems equitable and just.

SCHILLER DU CANTO & FLECK LLP
Attorneys for Petitioner

/s/ Tanya J. Stanish
BY: TANYA J. STANISH

SCHILLER DU CANTO & FLECK LLP
Attorney No. 26828
Attorneys for Petitioner
321 North Clark Street, Suite 1200
Chicago, Illinois 60654-4714
Telephone No. (312) 641-5560
Facsimile No. (312) 641-6361
Service by Facsimile Transmission Will Be Accepted
Service Preferred at: chicagoservice@sdflaw.com

FILED DATE: 5/13/2025 10:58 AM 2021D009220

STATE OF ILLINOIS )
)
COUNTY OF COOK )

1. Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters I certify that I verily believe the same to be true.

DATED: 5/12/2025

DocuSigned by:
Jeanette Ivankovich
4E9A511A98A7481...
JEANETTE IVANKOVICH