**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| STEVEN IVANKOVICH,<br><br>Plaintiff,<br>v.<br><br>SCHILLER, DUCANTO & FLECK, LLP and JOSEPH SEINITZ,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-25402-KMW<br><br>Hon. Judge Kathleen M. Williams<br><br>Magistrate Judge Enjolique A. Lett |

**DEFENDANT SCHILLER DUCANTO & FLECK, LLP'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO BAR TESTIMONY OF PLAINTIFF'S EXPERT, JAMES DOPPKE, JR.**

Defendant, SCHILLER, DuCANTO & FLECK, LLP ("SDF"), by and through its undersigned counsel, hereby replies in support of its motion to bar the testimony of James Doppke, Jr. ("Doppke"), the expert of Plaintiff, STEVEN IVANKOVICH ("Steven"). In support thereof, SDF states as follows:

## ARGUMENT

### I. Cases Relied Upon by Steven Do Not Establish Relevance of Doppke's Testimony

Steven cites two cases to support his position that Doppke's testimony is relevant to the claims in this matter: *Wyndham* and *Diamond Resorts*. A cursory reading of both opinions shows the weakness in Steven's position.

In *Wyndham*, the defendant attorney was sued for tortious interference and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Wyndham Vacation Ownership, Inc. v. Sussman*, 2021 WL 5177339, at *1 (M.D. Fla. Nov. 5, 2021). The plaintiff disclosed a legal ethics expert to support its FDUTPA claim (though not its tortious interference claim). *Id.* The attorney moved to bar the expert, arguing that his expert testimony was not relevant to the FDUTPA claim. *Id.* at *2. Steven correctly points out that the district court denied the motion to bar. However, Steven curiously omits the basis for the court's denial, wherein the Court explicitly explained that, "[g]iven FDUTPA's liberal construction, a violation of a legal ethics rule can potentially qualify as a deceptive act or unfair trade practice under the Act." *Id.* Thus, the expert's testimony was allowed since an ethical violation could establish an element of the plaintiff's

FDUTPA claim. *Id.* Here, Steven cannot point to a corollary claim in the instant case. Not one of Steven's nine causes of action includes an element that can be satisfied by establishing an ethical violation.

Steven's reliance on *Diamond Resorts* fares no better. In *Diamond Resorts*, the plaintiff was in the business of selling timeshares and sued a number of defendants, including a law firm called DC Capital Law Firm, LLP ("DC Capital"), claiming that they tortiously interfered with the plaintiff's customers, *i.e.*, timeshare owners, by falsely advising the timeshare owners that they could legally terminate their timeshare contracts. *Diamond Resorts U.S. Collection Dev., LLC v. Newton Grp. Transfers, LLC*, 2022 WL 1642865, at **1, 13-14 (S.D. Fla. Mar. 31, 2022). Both the plaintiff and DC Capital disclosed legal ethics experts. Both parties also moved to bar the other's expert.

With respect to DC Capital's legal ethics expert, the plaintiff moved to bar on various grounds, *none of which were based on relevance. Id.* at *2. Therefore, while the magistrate judge denied in part and granted in part the plaintiff's motion to bar, it did not address any dispute about the relevance of DC Capital's expert. *Id.* at **2-3.

Regarding the plaintiff's legal expert, DC Capital's motion to bar did raise a relevance objection. In denying the motion, the magistrate judge explained that the expert's testimony could materially advance a material aspect of the plaintiff's case, namely "that DC Capital was not operating as a legitimate law firm and therefore cannot hide behind the agency protection to shield it from liability for tortious interference." *Id.* at *5. This comment was a reference to an affirmative defense raised by DC Capital asserting as follows:

> Law Firm asserts that Plaintiffs' cause of action for tortious interference with contractual relationship fails on the basis that Law Firm was acting within the course and scope of its agency relationship with its clients. Any purported "interference" with these contractual relationships was privileged, justified, and occurred within the confines of the attorney-client relationships, at the direction of the client.

*See* **Exhibit 1**, Answer and Affirmative Defenses of DC Capital, at p. 22. In other words, DC Capital asserted that it could not be held liable for tortious interference with the plaintiff's customers since those customers were also clients of DC Capital and the allegedly tortious activity occurred within the context of DC Capital's attorney-client relationships.

As the magistrate judge noted in his ruling, the plaintiff countered this defense on the theory that DC Capital was not a legitimate law firm and that it therefore could not shield itself from

liability through the supposed agency relationships it had with its supposed clients. *Diamond Resorts*, 2022 WL 1642865, at *5. In that context, the court found relevant the testimony of the plaintiff's ethical expert, who opined that DC Capital's alleged misconduct violated "all, or nearly all, of the ethics rules that relate to a lawyer's duties to her clients" and that its alleged misconduct "supports a finding that DC Capital was acting in its own interests instead of the interest of its clients, thus rendering DC Capital's reliance on the attorney-client relationship to shield itself from the tortious interference claims unjustified." *Id*. at *3.

Those unique circumstances are not present here. SDF has not levied an agency-based defense, nor has Steven asserted a counter-theory that SDF is an illegitimate law firm. Unlike *Diamond Resorts*, whether SDF acted unethically has no bearing on the claims or defenses in this matter.

Steven has therefore submitted no authority supporting his use of a legal ethics expert in a suit that involves no claims or defenses relating to whether SDF complied with the Illinois Rules of Professional Conduct.

## II. Doppke's Refusal to Testify that SDF Violated Ethical Rules Was Not Based on His Belief that Only the Illinois Supreme Court Can Determine Ethical Violations

At his deposition, Doppke refused to testify that SDF violated any rules of professional conduct. Steven would have the Court believe that Doppke's refusal was based on a "specific technical reason, grounded in his expertise, which is that only the Illinois Supreme Court can find or issue violations." Resp. at 9. This is nonsensical on its face. Two obvious reasons prove the absurdity of Steven's position.

***First***, the Illinois Rules of Professional Conduct not only contemplate other attorneys being capable of concluding that another attorney committed an ethical violation but, under certain circumstances, ***require*** attorneys to report such ethical violations upon becoming aware of them. Specifically, Rule 8.3(a) states as follows: "A lawyer **who <u>knows</u> that another lawyer has <u>committed a violation</u>** of Rule 8.4(b) or Rule 8.4(c) shall inform the appropriate professional authority." Ill. R. Prof. Conduct 3.7 (emphasis added). Thus, while it is obviously true that only the Illinois Supreme Court can *punish* a violation of the ethical rules, nothing precludes other attorneys from concluding that a violation has occurred.

Doppke, of course, is well aware of this. As Steven conceded in his Response, Doppke originally testified at his deposition that SDF did, in fact, violate the ethical rules, including Rule

8.4(c). *See* Doppke Dep., ECF 72-4 at 24:19-22. Doppke quickly backtracked off that opinion when confronted with the fact that he has not reported any SDF attorney to the Illinois disciplinary authority, as would have been his own ethical obligation under Rule 8.3(a) if he truly believed that an ethical violation of Rule 8.4(c) had occurred. *Id.* at 25:3-34:10. In other words, if Doppke stood by his initial opinion that SDF violated Rule 8.4(c), he would have been admitting to an ethical violation himself. Faced with this quandary, Doppke abandoned his prior opinion and admitted that he had not concluded that SDF violated any ethical rules but rather merely concluded that SDF's actions were "inconsistent" with the rules. *Id.* Steven's argument now that Doppke was drawing a "technical" distinction when refusing to testify that SDF violated the ethical rules is a post-hoc effort to coverup the true nature of Doppke's testimony.[1]

***Second***, if a supposed ethical expert like Doppke is unable to conclude that SDF violated any ethical rules since such conclusion is only within the jurisdiction of the Illinois Supreme Court, then how can a jury make that assessment? Under Steven's logic, a jury cannot make that determination either, rendering the whole exercise futile.

Simply put, to the extent the Illinois Rules of Professional Conduct have any relevance to this matter, their relevance vanishes if all Steven can prove to a jury is that SDF may have acted "inconsistently" with the rules without actually violating them.

## III. Steven is Unable to Demonstrate that Doppke's Opinion Regarding Rule 4.4(a) is Reliable or Based Upon Sufficient Facts or Data

To the extent Doppke's testimony is not fully barred, the Court should at least exclude Doppke's opinion that SDF's conduct may have been inconsistent with Rule 4.4(a) of the Illinois Rules of Professional Conduct. In its opening brief, SDF argued that Doppke could not reliably testify on this topic because his testimony was based upon his own definition of "evidence" as that term is used in Rule 4.4(a). *See* Ill. R. Prof. Conduct 4.4(a) ("a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or ***use methods of obtaining evidence that violate the legal rights of such a person***") (emphasis added). Based upon his own definition, Doppke concluded that SDF was attempting to "obtain evidence" when attempting to locate Steven's whereabouts to enforce the outstanding body attachment

[1] Note that in both *Wyndham* and *Diamond Resorts*, the legal ethics experts opined that if the allegations against the defendant lawyers were true, the defendants *violated* the applicable ethical rules. *Diamond Resorts*, 2022 WL 1642865, at *3; *Wyndham*, 2021 WL 5177339, at *2.

orders.

In response, Steven cites to three criminal cases for the proposition that location information can constitute evidence. Steven's argument is baffling. In two of the cases, the defendants sought to suppress evidence obtained from their residences on the grounds that the searches were based on location data unlawfully obtained by law enforcement. *See Craig v. State*, 394 So. 3d 1165, 1167 (Fla. Dist. Ct. App. 2024); *State v. Sylvestre*, 254 So. 3d 986, 988 (Fla. Dist. Ct. App. 2018). The location data in those cases was not the evidence; the location data ***led*** to the evidence.

The third case is somewhat closer but still offers Steven no help. In *People v. Smith*, 2017 IL App (1st) 141814-UB, ¶ 3, a pizza delivery man was shot and killed while delivering a pizza. Law enforcement subsequently used advanced technology to track the location of the cell phone used to make the pizza delivery order, which led to the arrest of the defendant, who was carrying the cell phone. *Id.* at ¶ 22. The defendant moved to quash his arrest and suppress evidence obtained from his arrest on the ground that law enforcement had no probable cause to arrest the defendant, aside from the cell phone tracking surveillance used to locate the cell phone on the defendant's body. *Id.* at ¶ 64. The defendant argued that the cell phone tracking surveillance could not establish probable cause since the State failed to provide expert testimony explaining how the technology actually worked. *Id.* at ¶ 93. The appellate court agreed and remanded the matter for a new hearing on the defendant's motion to quash and suppress. *Id.* at ¶ 104.

Thus, in *Smith*, the location of the cell phone (and its proximity to the defendant) was the evidence used by the State to establish the defendant's guilt. However, those distinctive circumstances are not present here. Steven's location in Islamorada, Florida was not ***evidence of anything***. His location was simply a means to his arrest. And that arrest was made pursuant to body attachment orders that were not premised whatsoever on where Steven's current location happened to be once he was found by law enforcement.

Steven therefore provides no basis for Doppke's conclusion that Rule 4.4(a) was implicated by SDF's conduct. The Court cannot allow Doppke to present testimony based upon his own, unsupported interpretation of what Rule 4.4(a) means.

In its opening brief, SDF also argued that Doppke's Rule 4.4(a) testimony should be barred because Doppke could not identify a specific "legal right" that SDF violated. To reiterate, Rule 4.4(a) prohibits an attorney from "using methods of obtaining evidence that violate the legal rights"

of a third party. *See* Ill. R. Prof. Conduct 4.4(a). In response, the best Steven can muster is Doppke's testimony wherein he listed off supposed "rights" that SDF violated. Resp. at 14-15. Steven neglects to mention that when Doppke was then asked what legal authority he based those rights on, he was unable to provide an answer. *See* Doppke Dep., ECF 72-4 at 79:13-81:1; 82:2-89:4. As just one example, Doppke claimed that one of Steven's rights grew out of his "relationship with Seinitz." *Id.* at 79:13-20. When asked about the legal basis for this right, Doppke provided the following testimony:

> Q: You stated that it arose from a relationship, but where are you basing that legally out of?
> **A: Well, my understanding at the time of this -- I wrote this opinion was that there was an employment relationship between Seinitz and Ivankovich.**
> Q: Okay. And so which --
> **A: That there had been.**
> Q: Which employment laws or rules or regulation then are you ultimately referring to then?
> **A: Well, I don't have a specific one in mind.**
> Q: Okay. And you don't even have what state law you're referring to here, correct?
> **A: No.**

*Id.* at 80:2-17. In other words, Doppke was not actually identifying a "legal right," as that term is used in Rule 4.4(a). Instead, Doppke was referencing a theoretical right that, in his opinion, should be encompassed by Rule 4.4(a). But that is not what the rule contemplates.

In order to establish that SDF acted "inconsistently" with Rule 4.4(a), Doppke needed to identify an actual legal right that SDF violated. Having failed to do so, his opinion as to Rule 4.4(a) should be barred under Rule of Evidence 702 as it is not "based on sufficient facts or data." *See* Fed. R. Evid. 702(c).

WHEREFORE, Defendant, SCHILLER DuCANTO & FLECK LLP, respectfully requests that the Court:

(a) Exclude all testimony of Plaintiff's expert, James Doppke, Jr., or, alternatively, bar him from testifying as to Rule 4.4 of the Illinois Rules of Professional Conduct; and

(b) Grant any other relief the Court deems just.

Dated: September 25, 2026

Respectfully Submitted,

/s/ Ramses Jalalpour
Ramses Jalalpour (admitted *pro hac vice*)
Illinois Bar No. 6313128
Email: rj@konicekdillonlaw.com
KONICEK & DILLON, P.C.
70 W. Madison St., Ste. 2060
Chicago, IL 60602
Telephone: (630) 672-3728
Facsimile: (305) 262-9659

/s/ Alexandra L. Tifford
Alexandra L. Tifford
Fla. Bar No. 0178624
Email: atifford@fowler-white.com
FOWLER WHITE BURNETT, P.A.
Citigroup Center
201 S. Biscayne Blvd., 20th Floor
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-7549

*Attorneys for Defendant Schiller, DuCanto & Fleck, LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by other authorized means for counsel or parties who are not authorized to receive Notices of Electronic Filing electronically.

s/ Alexandra L. Tifford
Alexandra L. Tifford

| **SERVICE LIST**<br>*Ivankovich v. Schiller, DuCanto & Fleck, LLP and Joseph Seinitz* | |
|---|---|
| Joshua Truppman, Esq.<br>Benjamin Brodsky, Esq.<br>Brodsky Fotiu-Wojwoticz, PLLC<br>44 W Flagler St., Suite 2200<br>Miami, Florida 33130,<br>Telephone: (305) 503-5054<br>Email: bbrodsky@bfwlegal.com<br>Email: joshua@bfwlegal.com<br>*Counsel for Plaintiff* | |