**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-25402-CV-WILLIAMS**

STEVEN IVANKOVICH,

Plaintiff,

v.

SCHILLER, DUCANTO & FLECK, LLP, *et al.*,

Defendants.
_______________________________________/

# ORDER

**THIS MATTER** is before the Court on Defendant Schiller, Ducanto & Fleck, LLP's Motion to Dismiss Plaintiff's Amended Complaint (DE 33). The Motion is fully briefed and ripe for review.[1] For the reasons set forth below, Defendant's Motion (DE 33) is **GRANTED IN PART AND DENIED IN PART**.

## I. FACTUAL BACKGROUND[2]

In October 2021, the former wife of Plaintiff Steven Ivankovich ("***Mr. Ivankovich***") initiated divorce proceedings against him in Illinois state court. (DE 31 ¶ 5). Defendant Schiller, Ducanto & Fleck LLP ("***Schiller Firm***") served as her attorney. (*Id.*) During the divorce proceedings, the Illinois state court issued two body attachment orders ("***BAOs***")

[1] Plaintiff responded in opposition ("***Response***") (DE 35), and Defendant replied (DE 39).

[2] The Court construes the allegations in the Amended Complaint in the light most favorable to Plaintiff and takes all factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

against Mr. Ivankovich pursuant to 750 ILCS 5/713(a).[3] (*Id.* ¶¶ 8–9). As relevant here, the second BAO was issued pursuant to Mr. Ivankovich being held in indirect civil contempt for his failure to pay the Schiller Firm an interim attorneys' fee award entered against him for $425,000. (*Id.* ¶ 9).

As alleged in the Amended Complaint, to collect payment, the Schiller Firm undertook a series of coercive actions. (*Id.* ¶¶ 12–14, 17). First, the Schiller Firm filed a motion before the Illinois state court to allow local law enforcement to enter Mr. Ivankovich's civil BAOs into criminal databases, such as the National Crime Information Center ("***NCIC***"). (*Id.* ¶ 19). Mr. Ivankovich objected and argued that the NCIC existed for transmitting criminal history and not civil contempt citations which, Mr. Ivankovich argued, did not qualify as a criminal warrant. (*Id.* ¶ 20). The Illinois court granted the Schiller Firm's request based on its representations that civil warrants could be entered into criminal databases or would otherwise be denied by NCIC. (*Id.* ¶¶ 21-22). Once granted, the Schiller Firm regularly emailed law enforcement agencies in both Illinois and Colorado[4] labeling the BAOs as "nationwide extraditable" and making the BAOs viewable by sheriffs outside the state of Illinois. (*Id.* ¶ 27). This, however, was not contemplated in the Illinois court's order, which did not expressly permit enforcement outside of Illinois nor did it provide for extradition. (*Id.* ¶ 25).

---

[3] This statute provides that "[i]n any proceeding to enforce an order for [child] support, where the obliger has failed to appear in court . . . the court may enter an order for the attachment of the body." 750 Ill. Comp. Stat. 5/713(a). It further directs the sheriff of any Illinois county to take the individual into custody and set a hearing date. *Id.*

[4] The BAOs were issued in Illinois where Mr. Ivankovich is believed to have resided before the initiation of the divorce proceedings, and in Colorado where Mr. Ivankovich owns additional property. (DE 31 ¶ 6, 39).

The Amended Complaint further alleges that the Schiller Firm worked with Joseph Seinitz ("***Mr. Seinitz***"),[5] Mr. Ivankovich's former employee, to access security cameras installed at various properties owned by Mr. Ivankovich to improperly surveil him to facilitate his arrest. (*Id.* ¶¶ 32-39). After surveilling the properties for several weeks, on April 26, 2025, Mr. Seinitz observed Mr. Ivankovich at his Florida home and immediately contacted the Schiller Firm. (*Id.* ¶¶ 39-53). Armed with this information, the Schiller Firm contacted the Monroe County Sheriff's Office ("***MCSO***"), requesting that they execute on the two outstanding "warrants." (*Id.* ¶¶ 54–55). The Schiller Firm provided identifying information for Mr. Ivankovich, including his full name, date of birth, and the address of his property in Islamorada and advised law enforcement that the BAOs were civil warrants for Mr. Ivankovich's arrest. (*Id.* ¶ 56). The MCSO dispatcher believed that the Schiller Firm employee providing this information was a member of the Chicago Police Department, and there is no indication that the employee took any affirmative steps to correct them. (*Id.* ¶¶ 57-58). It is further alleged that to increase the likelihood of detention, the Schiller Firm (on the recommendation of Mr. Seinitz) informed MCSO that Mr. Ivankovich was armed and likely to resist arrest. (*Id.* ¶ 59).

The Schiller Firm allegedly requested that MCSO execute the BAOs while knowing that there was no legal basis to imprison Mr. Ivankovich because he could not be extradited to Illinois based on a civil warrant. (*Id.* ¶¶ 56, 65–66). Nevertheless, MCSO arrived at Mr. Ivankovich's Florida home, detained him, and advised him that MCSO was

---

[5] Although Mr. Seinitz is named as a defendant in this case, he did not move to dismiss the Amended Complaint. Any allegations as to him are not relevant to resolving the instant Motion.

contacted by Cook County and had an extraditable warrant for his arrest. (*Id.* ¶¶ 70–76). Mr. Ivankovich was transported to Monroe County Detention Facility and subsequently moved to a detention facility in Key West. (*Id.* ¶ 78). During his detention, the Schiller Firm purportedly remained in communication with MCSO to prolong his imprisonment. (*Id.* ¶ 83). The Schiller Firm's purported goal in prolonging the detention was to either punish Mr. Ivankovich for not paying the outstanding attorneys' fees, or to cause Mr. Ivankovich or his elderly parents to pay the outstanding fees. (*Id.* ¶ 81). After thirty-five days, the state of Illinois confirmed that it would not extradite him, and he was ultimately released on June 2, 2025. (*Id.* ¶ 90–91).

## II. PROCEDURAL BACKGROUND

On February 24, 2026, Mr. Ivankovich filed the operative Amended Complaint asserting ten counts under both state and federal law, eight of which are directed at the Schiller Firm.[6] The Schiller Firm now moves to dismiss several of those claims.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do[.]") (citations omitted). Rule 12(b)(6) does not allow dismissal of a claim because a court anticipates "actual proof of those facts is improbable," but the

[6] The Parties agree that Florida law governs the state law claims at issue. Thus, the Court applies Florida law in its analysis.

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

In ruling on a 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw reasonable inferences in plaintiff's favor. *See Speaker v. United States Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Although the court resolves all doubts or inferences in plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that she is entitled to relief. *Twombly*, 550 U.S. at 556. A plaintiff makes a facially plausible claim when he or she pleads factual content from which the court can reasonably infer that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64. "Dismissal under Rule 12(b)(6) motion is appropriate only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1326 (11th Cir. 2004) (citations and quotations omitted).

## IV. DISCUSSION

Plaintiff's Amended Complaint asserts eight claims against the Schiller Firm: (I) false imprisonment, (II) malicious prosecution, (III) abuse of process (V) intrusion upon seclusion, (VI) civil conspiracy to commit intrusion upon seclusion, (VII) violation of the

Electronic Communications Privacy Act 18 U.S.C. §§ 2511 & 2520; (VIII) violation of the Stored Communications Act 18 U.S.C. §§ 2701(a)(1) & 2707; (IX) violation of the Computer Fraud and Abuse Act 18 U.S.C. § 1030; and, (X) violation of the Florida Computer Crimes Act Fla. Stat. §815.06. The Schiller Firm moves to dismiss Counts I, II, III, V, VI, VIII and IX the Amended Complaint.

**A. The Court is permitted to take judicial notice of related court proceedings for limited purposes.**

As a preliminary matter, the Court addresses whether it may take judicial notice of court opinions and judgments in the underlying court proceedings that form the basis for the instant litigation. In its Motion, the Schiller Firm asks the Court to take judicial notice of thirteen filings or orders in the attendant court proceedings attached as exhibits to the Motion. (DE 33). Mr. Ivankovich objects to the Court's judicial notice of these court filings arguing that, among other things, the exhibits are "cherry-picked court papers from several years of proceedings before various courts". (DE 35). Mr. Ivankovich further argues that the rule of completeness precludes the Court from taking judicial notice of select court documents and that the documents themselves introduce facts outside the four corners of the Complaint. (*Id.*)

"The court may judicially notice a fact that is not subject to reasonable dispute because it. . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "[C]ourts must consider the complaint it in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[A] court may take notice

of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The court is permitted to take judicial notice of opinions and judgments in an underlying proceeding that assist in articulating the procedural posture of the case. *See Davis v. Self*, 547 Fed. Appx. 927, 929 (11th Cir. 2013) (finding that district court did not err in taking judicial notice of opinions and judgments in the underlying custody and child support proceedings).

The Court finds that it is appropriate to take judicial notice of court opinions and judgments in underlying court proceedings that are germane to the Court's analysis.[7] To begin, publicly available orders and judgments from tangentially related court proceedings "are accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, Mr. Ivankovich does not question the authenticity of the exhibits to the Motion, nor could he. Additionally, throughout the Amended Complaint Mr. Ivankovich references the underlying court proceedings (including, in one event, a screenshot of one of the orders that the Schiller Firm includes as an exhibit). Mr. Ivankovich cannot use the existence of the underlying court proceedings as both a sword and a shield, referencing the court orders when beneficial

[7] Mr. Ivankovich also argues that the Schiller Firm does not properly request that the Court take judicial notice as prescribed in Fed. R. Evid. 201(c)(2), but instead, asks the Court "in conclusory fashion" to take judicial notice of the court documents in a footnote. (DE 35). Mr. Ivankovich also requests a hearing pursuant to Fed. R. Evid. 201(e) on the propriety of taking judicial notice and the nature of the fact to be noticed. (*Id.*) While the Court acknowledges that a separate filing requesting that the Court take judicial notice of the thirteen exhibits more closely aligns with Fed. R. Evid. 201(c)(2), the Schiller Firm's failure to do so is not fatal. Further, because Mr. Ivankovich asserts his objections to the Court's judicial notice in his Response and the Court's judicial notice is narrowly tailored, Mr. Ivankovich has been afforded the opportunity to be heard and the Court need not conduct a separate hearing.

while asking the Court to remain blind to the court proceedings otherwise. The Court also finds that Mr. Ivankovich's concerns about the completeness of the exhibits unavailing. In taking judicial notice of court orders and judgments in the underlying proceedings, the Court is not limited to the thirteen exhibits to the Motion but the court dockets *in totum*. Indeed, if there were any orders or judgments that nullified those identified by the Schiller Firm, Mr. Ivankovich could have directed the Court to take judicial notice of such documents. Nevertheless, the Court confines its notice of the orders and judgments in the underlying proceedings to the existence of the judicial act and nothing further.

**B. False Imprisonment (Count I)**

In Count I, Mr. Ivankovich asserts a claim for false imprisonment against the Schiller Firm. (DE 31 ¶¶ 97–101). Under Florida law, "[f]alse imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Johnson v. Weiner*, 155 Fla. 169, 19 So.2d 699, 700 (1944). To state a claim for false imprisonment, a plaintiff must allege: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances." *Archer v. City of Winter Haven*, 846 Fed.Appx. 759, 763 (11th Cir. 2021) (quoting *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. 4th DCA 2015) (citing cases); *see also Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So. 2d 678, 681 (Fla. 1980) (same).

Here, the Amended Complaint alleges that the Schiller Firm is liable for false imprisonment because of its misrepresentations to the Illinois state court and MCSO precipitated Mr. Ivankovich's thirty-five-day imprisonment. Conversely, the Schiller Firm

argues that the Amended Complaint fails to state a claim for false imprisonment and is nonetheless barred by the principle of collateral estoppel and the litigation privilege. Before considering whether collateral estoppel and the litigation privilege apply, the Court first considers whether Count I alleges a cognizable claim for relief. It does not.

**1. The Amended Complaint fails to state a claim for false imprisonment.**

A complaint fails to state a claim upon which relief may be granted when the well-pleaded facts, taken as true, are insufficient to establish a cause of action. *See Martinez v. Am. Airlines, Inc.*, 74 F.3d 247, 248 (11th Cir. 1996); *Iqbal*, 556 U.S. at 678. The Schiller Firm argues that the existence of the BAOs establishes probable cause defeating any allegations that Mr. Ivankovich's detention: was unlawful, done without legal authority or color of authority or was unreasonable or unwarranted under the circumstances. (DE 33 at 12–13). The Court agrees.

A claim for false imprisonment is defeated by probable cause. *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause is defined as "reasonable ground . . . to warrant a . . . belief that the named suspect is guilty of the offense charged." *Johnson v. State*, 660 So. 2d 648, 654 (Fla. 1994). In Florida, probable cause is satisfied when an arrest is objectively reasonable under the circumstances. *See Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992). Importantly, an arrest based on a valid warrant is considered *per se* reasonable, and in Florida, a body attachment order based on civil contempt functions as a criminal arrest warrant. *See United States v. Phillips*, 834 F.3d 1176, 1177–78, 1181–82 (11th Cir. 2016) (holding that officer was authorized to arrest the petitioner based on a bodily attachment order for unpaid child support because a civil body attachment order is "no different" from a criminal

arrest warrant for purposes of the Fourth Amendment and therefore satisfies Florida's probable cause).

Mr. Ivankovich does not deny the existence of the BAOs entered by the Cook County Court; indeed, he acknowledges their existence in the Amended Complaint. (DE 31 ¶¶ 8,9). Instead, Mr. Ivankovich alleges that the BAOs arose from civil contempt for which he would not be subjected to extradition, which, he argues, was the pretext for his prolonged detention[8]. (*Id.* ¶ 99). Mr. Ivankovich also argues that because the BAOs were issued by a court in Illinois, they were not actionable in Florida save for the Schiller Firm's misrepresentations that Illinois would extradite him. (*Id.* ¶31). The Court finds this argument unpersuasive. Although the BAOs did not expressly provide for detention in Florida, the BAOs were issued by a court with jurisdiction over the matter, included in a national database[9], and determined to be enforceable in Florida, making them at least "facially valid" and therefore "under legal authority." (DE 33 at 13); *Harder*, 174 So. 3d at 532. Because Mr. Ivanovich's imprisonment was based on a "facially valid" process, his false imprisonment claim fails. *Id.* Nevertheless, the Court finds that Mr. Ivankovich's false imprisonment is barred by Florida's litigation privilege.

---

[8] The Court notes that—as is the case with any civil contempt—Mr. Ivankovich could have effectuated his own release by abiding by the Illinois Court orders. Instead, Mr. Ivankovich's unwillingness to comply with the Illinois Court's orders contributed, in part, to his prolonged detention by MCSO.

[9] Mr. Ivankovich argues that the Illinois court's decision to register the BAOs on the NCIS database was predicated on the Schiller Firm's misrepresentations. (DE 31 ¶¶ 19, 21-22). The Court notes, however, that Mr. Ivankovich's attorney was present at the hearing on the matter, objected and argued that the "NCIC system existed for transmitting criminal history record information and not a civil contempt citation that did not qualify as a criminal warrant." (DE ¶ 20). Because Mr. Ivankovich's objections were considered by the Illinois court, the Court will not opine on the merits of the Illinois court's decision.

**2. The allegations giving rise to the false imprisonment claim are protected by the litigation privilege.**

In Florida, the litigation privilege affords parties absolute immunity to "any act occurring during the course of its judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior. . . so long as the act has some relation to the proceeding. *Levin v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). The privilege is intended to promote effective advocacy by minimizing the threat of legal backlash from actions taken during judicial proceedings. *See LatAm Invs., LLC v. Holland & Knight*, *LLP*, 88 So. 3d 240, 244 (Fla. 3d DCA 2011). Though an affirmative defense, the litigation privilege can be raised on a motion to dismiss when the complaint "affirmatively and clearly shows the conclusive applicability of the defense." *Jackson v. BellSouth Telecomm.*, 372. F.3d 1250, 1277 (11th Cir. 2004) (collecting cases). To show the defense's "conclusive applicability," a complaint need only allege that defendant's misconduct bears "some relation" to an active judicial proceeding. *See id.* at 1276–77; *Levin*, 639 So. 2d at 608.

Here, the allegations in the Amended Complaint arise from the Schiller Firm's ongoing representation in the divorce proceeding in Illinois, including allegations of misrepresentations to the Illinois court relating to the ability to register the BAOs on the NCIS, coordination with MCSO to arrest Mr. Ivankovich and his prolonged detention while purportedly awaiting extradition to Illinois. *See generally* (DE 31). The Amended Complaint, therefore, alleges that the Schiller Firm's purported misconduct relates to ongoing litigation, establishing the defense's "conclusive applicability" at the motion to dismiss stage. *See Jackson*, 372 F.3d at 1276–77.

Mr. Ivankovich's counterarguments are unavailing. (DE 35 at 12-13). Mr. Ivankovich relies on *Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992), which held that defamatory statements voluntarily made to law enforcement prior to the institution of criminal charges are presumptively qualifiedly privileged, rather than absolutely privileged.

In *Fridovich*, the plaintiff, Edward Fridovich, shot and killed his father. *Id*. at 66. After an extensive investigation, law enforcement determined that the shooting was accidental. *Id*. No charges were filed and the investigation was closed. *Id*. As alleged in the complaint, Edward's brother, conspired with other members of his family to have Edward charged with the intentional killing of his father. *Id*. To do so, the complaint alleged that the conspirators identified members of the family that could lie most convincingly and directed those individuals to make false statements to law enforcement with the goal of reopening the investigation. *Id*. Edward was ultimately tried and convicted of manslaughter. *Id*.

After the trial, the family members who testified recanted and admitted that their in-court testimony was false. *Id*. Edward sued the conspirators for defamation, intentional infliction of mental distress, and malicious prosecution. *Id*. The trial court dismissed the complaint and the appellate court, as relevant here, affirmed the dismissal for defamation, concluding that defamatory statements made during judicial proceedings are absolutely privileged. *Id*. The appellate court, however, certified the question of whether the absolute privilege extended to defamatory statements made to an investigating officer or prosecutor prior to the filing of a criminal charge. *Id*. The Florida Supreme Court found

that while such voluntary defamatory statements were not absolutely privileged, the statements were presumptively qualifiedly privileged. *Id*.

*Fridovich* is readily distinguishable. To begin, the alleged misconduct by the Schiller Firm relates to ongoing litigation in which the Schiller Firm actively participated, rather than defamatory statements made during an investigation that ultimately resulted in criminal charges. To the extent Mr. Ivankovich argues that the Schiller Firm's misrepresentations resulted in his arrest and detention by the MCSO, this too is distinguishable. By Mr. Ivankovich's own admission, his detention by MCSO was not the result of criminal actions, but civil. (DE 31 ¶ 63). Further, Mr. Ivankovich does not allege that the Schiller Firm made any defamatory statements that ultimately led to his detention. Instead, Mr. Ivankovich alleges that: the Schiller Firm misrepresented that the BAOs were civil warrants for his arrest (*Id*. ¶ 56); the MCSO dispatcher understood that the Schiller Firm employee was calling from the Chicago police department[10] (*Id*. ¶ 57); the Schiller Firm warned MCSO that Steven was armed and would resist by attempting to flee (*Id*. ¶59); and that Illinois planned to extradite Mr. Ivankovich (*Id*. ¶. 66). The Court finds that the alleged misconduct by the Schiller Firm is inapposite to the conduct before the *Fridovich* Court and is therefore protected by an absolute litigation privilege rather than qualified privilege.

---

[10] Mr. Ivankovich does not allege that the Schiller Firm employee represented that he was calling from the Chicago police department, only that the MCSO records reveal that the dispatcher believed from the conversation that he was calling from the Chicago police department. (DE 31 ¶ 57). Neither does the Amended Complaint allege that the Schiller Firm employee was aware of the dispatcher's mistaken understanding, only that he did not disclose that he was a private individual and unaffiliated with law enforcement. (*Id*. ¶ 58).

Mr. Ivankovich also relies on *American National Title & Escrow of Florida, Inc. v. Guarantee Title & Trust Co.*, 810 So.2d 996 (Fla. 4th DCA 2002), to argue that the alleged actions of the Schiller Firm are not protected by the litigation privilege. There, the court held that absolute privilege did not apply where the defendants allegedly conspired to maliciously give false information to law enforcement authorities that resulted in the plaintiff being wrongfully arrested, jailed, and charged with crimes. *American Nat. Title*, 810 So.2d at 998. The complaint alleged that defendants did so to extort a settlement and put plaintiff out of business. *Id. While* on its face, *American Nat. Title* appears to be factually similar, it too is distinguishable. The allegations in *American Nat. Title*, although motivated by a desire to extort a settlement, were extra-judicial and were untethered to any actions in the underlying litigation. Indeed, the *American Nat. Title* Court explained that claims against a law firm were protected by the absolute litigation privilege because the alleged misconduct the firm was engaged in was done pursuant to court orders. *American Nat. Title*, 810 So. 2d at 998. By contrast, Mr. Ivankovich alleges that the Schiller Firm misconduct related to two existing court-issued BAOs entered during ongoing divorce proceedings. (DE 31 ¶¶ 26, 31). Because the alleged misconduct by the Schiller Firm arose directly from court orders or, at minimum, is tangentially related to the underlying litigation, the misconduct is distinct from that described in *American Nat. Title* and is, therefore, protected by the litigation privilege.[11] Consequently, the Court dismisses

[11] The *American Nat. Title* Court also found that the litigation privilege was an affirmative defense that could not be resolved at the motion to dismiss stage. *American Nat. Title*, 810 So.2d at 998. This conclusion, however, was specific to the allegations in the complaint and should not be interpreted to be a blanket rule barring the defense of the litigation privilege at the motion to dismiss stage. Further, the Eleventh Circuit has determined that the litigation privilege can be raised on a motion to dismiss when the

Count I without prejudice. Because the Court finds that the Amended Complaint fails to state a claim upon which relief can be granted for false imprisonment and is barred by the litigation privilege, it need not address the Schiller Firm's collateral estoppel defense.

### C. Malicious Prosecution (Count II)

Mr. Ivankovich asserts a claim for malicious prosecution against the Schiller Firm. (DE 31 ¶¶ 102-109). Under Florida law, to state a claim for malicious prosecution a plaintiff must allege:

> an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*EMI Sun Village, Inc. v. Catledge*, 779 Fed.Appx. 627, 633 (11th Cir. 2019) (quoting *Alamo Rent-a-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994)). "The failure of a plaintiff to establish any of one of these six elements is fatal to a claim of malicious prosecution." *Id*. "It is axiomatic that a plaintiff in a malicious prosecution case must, as an essential element of that cause of action, establish that the prior litigation giving rise to the malicious prosecution suit ended with a 'bona fide termination' in that party's favor." *Doss v. Bank of Am., N.A.*, 857 So.2d 991, 994 (Fla. 5th DCA 2003) (citations omitted).

Here, the Amended Complaint alleges that because of the Schiller Firm's misrepresentations to MCSO, Mr. Ivankovich was unlawfully detained, and a criminal

---

complaint "affirmatively and clearly shows the conclusive applicability of the defense." *Jackson*, 372 F.3d at 1277.

proceeding was commenced against him in Monroe County. (DE 31 ¶ 103). Mr. Ivankovich further argues that the Schiller Firm lacked probable cause to cause his arrest and that the Schiller Firm took affirmative steps to prolong his detention. (*Id*. ¶¶ 104, 106). Mr. Ivankovich also alleges that the proceeding was terminated in his favor because he was ordered to be immediately released. In response, the Schiller Firm argues that the claim is barred by collateral estoppel and, alternatively, that the Amended Complaint fails to allege critical elements of malicious prosecution. (DE 33). The Court will first address the sufficiency of the claim.

The Court finds that the Amended Complaint fails to sufficiently allege a claim for malicious prosecution. As discussed, there existed probable cause for Mr. Ivankovich's arrest because of the BAOs. *See supra* pp. 6–7. This alone defeats a critical element of a cause of action for malicious prosecution, the absence of probable cause. *See Phillips*, 834 F.3d at 1178, 1181–82; *Bailey*, 956 F.2d at 1119. Further, the Amended Complaint does not properly allege a "bona fide termination" of the original proceeding in his favor. A bona fide termination is a termination that indicates the "innocence of the charges or allegations contained in the first suit." *Steinmetz v. Pickholtz*, 414 So. 3d 309, 312–14 (Fla. 3d DCA 2025). "[S]uits that terminate because of technical or procedural reasons or considerations other than the merits of the first suit, are not 'bona fide terminations' and will not support a malicious prosecution suit." *Verdon v. Song*, 251 So.3d 256, 259 (Fla. 5th DCA 2018).

As an initial matter, the Court notes that the case caption in the Agreed Order for Immediate Release attached as Exhibit A ("***Agreed Order***") to the Amended Complaint identifies the parties at interest as *Steven Ivankovich v. Sheriff Rick Ramsey Sheriff*

*Monroe County*. (DE 31, Ex. A). Not only is the Schiller Firm not the plaintiff in that litigation, but it is also not even a party. While the Amended Complaint alleges that the Schiller Firm offered to assist MCSO's general counsel and attended a hearing on Mr. Ivankovich's petition for writ of habeas, Mr. Ivankovich does not allege that the Schiller Firm participated in the hearing, filed a notice of appearance, or took any affirmative steps to participate in the litigation. (DE 31 ¶ 83-85). Moreover, the Agreed Order grants limited relief, "to release Petitioner, Steven Ivankovich immediately." (DE 31, Ex. A). The Agreed Order does not opine on the merits of the BAOs or whether Mr. Ivankovich's arrest was lawful. (*Id*.) Because the Court finds that Mr. Ivankovich has not, and cannot, sufficiently allege a cause of action for malicious prosecution arising from his habeas petition in Monroe County, the Court will dismiss the claim with prejudice. Because the Court finds that Mr. Ivankovich did not properly allege a cause of action for malicious prosecution, it need not consider the Schiller Firm's collateral estoppel defense.

**D. Abuse of Process (Count III)**

In Count III, Mr. Ivankovich brings a claim for abuse of process. (DE 33 ¶¶ 110–117). Under Florida law to properly state a claim for abuse of process, the Eleventh Circuit has identified three elements: "(1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had an ulterior motive or purpose in exercising the illegal, improper or perverted process; and (3) the plaintiff was injured as a result of defendant's action." *EMI Sun Village, Inc.*, 779 F.App'x at 635 (citations omitted). "There is no abuse of process [] when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose." *Svistina v. Elbadramany*, No. 22-cv-20525, 2023 WL 34642, at *4 (S.D. Fla. Jan. 4, 2023);

*see also In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017) ("The fact that a party may be motivated by incidental or concurrent benefits of the use of process is not sufficient to constitute an abuse.").

Mr. Ivankovich alleges that by causing MCSO to arrest and detain him despite knowing that there was no justifiable basis for his arrest because Illinois would not extradite him, the Schiller Firm abused the legal process to retaliate, intimidate or otherwise harm him. (DE 31 ¶111-116). The Schiller Firm, however, argues that Mr. Ivankovich does not sufficiently state a claim for abuse of process and that his claim is otherwise barred by the litigation privilege and collateral estoppel. (DE 33 at 7–8, 15–18). The Court first analyzes the sufficiency of the claim.

The Court finds that the Schiller Firm had a reasonable basis in law for pursuing the arrest and detention of Mr. Ivankovich; the existence of the BAOs, irrespective of any ulterior or concurrent benefit that it may have had. As discussed, the Illinois court entered the BAOs for Mr. Ivankovich's violations of court orders in the divorce proceedings. The Illinois court also entered an order permitting the BAOs to be registered on nationwide criminal databases, including NCIS. Further, in Florida, a civil bodily attachment order is the functional equivalent of an arrest warrant. *See Phillips*, 834 F.3d at 1178. The Schiller Firm's coordination with MCSO to arrest Mr. Ivankovich pursuant to the BAOs was ultimately in pursuit of a remedy for which there was a legal basis. It does not matter that the Schiller Firm could benefit. *See Scozari v. Barone*, 546 So. 2d 750, 752 (Fla. 3d DCA 1989) ("If there [is] a reasonable basis in law and fact to initiate the judicial proceedings, then . . . processes [are] justified even though they may have served some other collateral purpose."). It is not enough for Mr. Ivankovich to allege that the Schiller Firm pursued his

arrest and detention to collect its attorney's fees; if there was a reasonable basis to initiate his arrest, an abuse of process claim fails. *Id.* As the Court previously noted, an arrest based on a facially valid BAO is reasonable, which negates element two. *See supra* pp. 6–7.

An abuse of process claim typically involves some kind of extortion. *Scozari*, 546 So. 2d at 752. Although Mr. Ivankovich alleges that the Schiller Firm instigated and prolonged his imprisonment to "extort" payment of its attorney's fees, this kind of "extortion" is meaningfully different than the kind that is required in an abuse of process claim. *See Svistina*, 2023 WL 34642, at *4–5 (finding that the plaintiff sufficiently alleged an abuse of process claim where the defendant initiated criminal proceedings to coerce the plaintiff into settling a parallel civil dispute, so this is a misuse of process); *Verdon,* 251 So. 3d at 258–59 (holding that a husband properly pled an abuse of process action against his wife when, after filing domestic violence charges against him, she filed a false affidavit and requested for his prosecution in an attempt to regain access to her husband's credit card because the purpose of a criminal charge is not to obtain a private financial advantage).

Those cases involve "the use of criminal or civil legal processes . . . to accomplish a purpose for which is not designed." *See Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984). Here, the Schiller Firm allegedly facilitated Mr. Ivankovich's arrest and prolonged detention to "extort" payment of attorney's fees. (DE 31 ¶ 116). However, because one of the BAOs arose from Mr. Ivankovich's failure to pay attorneys' fees owed to the Schiller Firm, any action by the Schiller Firm to enforce the BAO would necessarily be self-serving. An abuse of process claim therefore fails because the

process was used to accomplish its intended result and Count III is dismissed without prejudice. Because the Court finds that Mr. Ivankovich fails to state a claim, it need not opine on whether such a claim would be barred by the litigation privilege or collateral estoppel.

**E. Intrusion Upon Seclusion & Conspiracy to Commit Intrusion Upon Seclusion (Count V & Count VI)**

In Counts V and Count VI, Plaintiff asserts a claim for intrusion upon seclusion and conspiracy to commit intrusion upon seclusion. (DE 33 at 19–20). To state a claim for intrusion upon seclusion, a plaintiff must allege that a defendant: (1) intentionally intrudes, physically or otherwise, (2) upon the solitude or seclusion of another or his private affairs or concerns (3) in a way that is highly offensive to the reasonable person. *See Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. 2d DCA 2021) (quoting Restatement (Second) of Torts § 625B (A.L.I. 1977)). Florida law construes the phrase "highly offensive to a reasonable person" as equivalent to the "outrageousness" standard under Florida's tort of intentional infliction of emotional distress. *See Stoddard v. Wohlfhart*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991). A plaintiff pursuing a claim of intrusion upon seclusion must "show an intrusion into a private place and not merely a private activity." *Hammer v. Sorensen*, 824 F.App'x 689, 695 (11th Cir. 2020). It is well-settled that a "reasonable expectation of privacy exists within the curtilage of a residence." *See Jackman*, 334 So.3d at 657. To state a cause of action for civil conspiracy, a plaintiff must allege: (1) an agreement between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) an overt act in pursuance of the agreement, and (4) damage to the plaintiff as a result of the acts performed pursuant to the agreement. *Charles v. Fla. Foreclosure Placement Ctr.*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008); *Gordon v.*

*Bethel*, 359 So. 3d 802, 810 (Fla. 4th DCA 2023). The Schiller Firm argues that both claims are barred by the litigation privilege. The Court disagrees.

Although Florida's litigation privilege provides absolute immunity when a defendant's tortious behavior bears "some relation" to active litigation between the parties, the Court finds that the alleged actions run afoul of the litigation privilege. *Levin*, 639 So. 2d at 608. Here, the Amended Complaint alleges that the Schiller Firm conspired to, and did, access Mr. Ivankovich's private Security Camera, which transmitted images of the front driveway, the front door, and a portion of the backyard, where Mr. Ivankovich had a reasonable expectation of privacy. (DE 31 ¶ 33). The Amended Complaint further alleges that when Mr. Seinitz was terminated, he was instructed to delete his remote access to the security camera feed, no longer access the security cameras and to turn over all relevant information and control of same. (*Id*. ¶ 37). Mr. Ivankovich was unaware that Mr. Seinitz continued to access the feed. (*Id*. ¶ 38). Nevertheless, the Amended Complaint alleges that the Schiller Firm conspired with Mr. Seinitz to monitor Mr. Ivankovich's movements to facilitate his arrest. (*Id*. ¶¶ 39–55). If true, the Schiller Firm argues that any surveillance and coordination with Mr. Seinitz was in furtherance of the underlying litigation, namely, facilitating the execution of the BAOs, and bears some relation to the divorce proceedings and is therefore subject to the litigation privilege. The Court disagrees. While the Schiller Firm's pursuit of the BAOs is protected by the litigation privilege, the litigation privilege is not license to conspire with another party to improperly infringe on Mr. Ivankovich's reasonable expectation of privacy, as is alleged here. Therefore, the Motion to dismiss Counts V and VI against the Schiller Firm is denied.

### F. Stored Communications Act 18 U.S.C. §§ 2701(a)(1) & 2707

Mr. Ivankovich alleges that the Schiller Firm violated the Stored Communications Act 18 U.S.C. §§ 2701(a)(1) & 2707 (“***SCA***”) by directing Mr. Seinitz to access the Security Camera, whose video footage was accessible in cloud storage, to surveil Mr. Ivankovich. (DE 31 ¶¶ 153-55). The Schiller Firm argues that the SCA does not contemplate secondary liability, i.e., conspiracy claims under the SCA. (DE 33). In response, Mr. Ivankovich asserts that the Schiller Firm was not a mere recipient of electronic communication, instead, actively directed and induced Mr. Seinitz to access the information, in effect, making him an agent of the Schiller Firm. (DE 39).

The relevant section of the SCA provides that whoever “intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility; and thereby obtains… access to a wire or electronic communication while it is in electronic storage in such system shall be punished. . . .” 18 U.S.C. § 2701(a). The statute creates a private cause of action where any person injured by violation of the SCA can show that the person violating the SCA acted with a “knowing or intentional state of mind.” 18 U.S.C. § 2707 (a). As such, there are five elements of an SCA claim: “(1) access without authorization or exceeding an authorization to access (2) a facility (3) that provides an electronic communication service (4) thereby obtaining a wire or electronic communication (5) while the communication is in electronic storage.” *Benessere Inv. Grp., LLC v. Swider*, No. 24-cv-21104-RAR, 2024 WL 4652090, at *8 (S.D. Fla. Oct. 31, 2024) (citations omitted).

“[I]n delineating the boundaries of criminal liability under Section 2701(a) and civil liability under Section 2707(a), Congress made no mention of conspiracy, aiding and

abetting, or any form of secondary liability. The statute's plain language shows that Congress had one category of offenders in mind—i.e., those who directly access, or exceed their authority to access, a facility through which an electronic communication service is provided." *Council on American-Islamic Relations Action Network, Inc. v. Gabautz*, 891 F.Supp.2d 13, 26-27 (D.D.C. 2012). Consequently, the Court agrees that the SCA does not contemplate secondary liability and will not read it into the statute. *See Freeman v. DirecTV*, 457 F.3d 1001, 1006 (9th Cir. 2006) ("When a statute is precise about who can be liable courts should not implicitly read secondary liability into the statute.").

The Court also finds that the Amended Complaint does not allege that Mr. Seinitz acted as an agent of the Schiller Firm such that it would be vicariously liable under the SCA. As a preliminary matter, Mr. Ivankovich raises the existence of an agency relationship between the Schiller Firm and Mr. Seinitz for the first time in the Response. A complaint may not be amended by briefs in opposition to a motion to dismiss. *See Huls v. Llabona*, 437 Fed.Appx. 830, 832 n.5 (11th Cir. 2011) (holding that an argument raised for the first time in response to a defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and would not be considered on appeal).

Nevertheless, the allegations in the Amended Complaint do not plausibly suggest that an agency relationship existed between the Schiller Firm and Mr. Seinitz. "While the question of whether an agency relationship exists is a factual question, it is proper for a district court to assess the sufficiency of the factual allegations at the motion to dismiss stage." *SR20 Holdings, LLC, v. Old Republic Aerospace, Inc.*, No. 20-CV-61337, 2020

WL 6470637, at *1 (S.D. Fla. Sept. 22, 2020) (citing *Fojtasek v. NCL*, 613 F.Supp. 2d 1351, 1357 (S.D. Fla. 2009)). "Under Florida law, essential elements of an actual agency relationship are: '(1) acknowledgment by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent.'" *SR20 Holdings, LLC*, 2020 WL 6470637, at *1 (quoting *Tello v. Royal Caribbean Cruises, LTD*, 939 F.Supp. 2d 1269, 1277-78 (S.D. Fla. 2013)). The Amended Complaint does not allege that the Schiller Firm: had the right to control and direct Mr. Seinitz; formally engaged Mr. Seinitz; paid Mr. Seinitz; had the power to discharge Mr. Seinitz; or, that Mr. Seinitz's duties were part of the Schiller Firm's regular business. Instead, Mr. Ivankovich alleges that Mr. Seinitz was formerly employed by and subject to the control of Mr. Ivankovich's family or their affiliated entities. *See* (DE 31 ¶¶ 4, 32, 33, 36). At best, the Amended Complaint alleges coordination between Mr. Seinitz and the Schiller Firm to access the Security Camera to monitor Mr. Ivankovich's movements. *See* (*Id*. ¶¶ 39-54; 153-155). This, however, is insufficient to establish primarily liability under the SCA. *See Vista Marketing, LLC v. Burkett*, 999 F.Supp. 2d, 1294 (M.D. Fla. 2014) (granting judgment on the pleadings in favor of an attorney alleged to have encouraged client to continue accessing electronic communications during divorce proceedings, finding that the SCA does not provide for secondary liability). Because the Court finds that Mr. Ivankovich has not alleged sufficient facts to establish primary liability against the Schiller Firm under the Stored Communications Act, Count VIII is dismissed without prejudice against the Schiller Firm.

### G. Computer Fraud and Abuse Act 18 U.S.C. § 1030

The Schiller Firm argues that the same principle of secondary liability extends to Mr. Ivankovich's allegations under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("***CFAA***"). The Court disagrees. The CFAA differs from the SCA in that it expressly provides for secondary liability: "[w]hoever ***conspires to commit*** or attempts to commit an offense under subsection (a) of this section shall be punished. . . ." 18 U.S.C. § 1030(b) (emphasis added). The Amended Complaint, however, fails in one critical element: It does not allege a cognizable offense under the CFAA. The CFAA enumerates specific violations, most of which involve unauthorized access to computers operated by the Government or its agencies, financial institutions or protected computers[12]. 18 U.S.C. § 1030(a). Because the allegations in the Amended Complaint are not within the purview of CFAA, the Court dismisses Count IX as to the Schiller Firm with prejudice.

## V. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (DE 33) is **GRANTED IN PART AND DENIED IN PART**.

---

[12] The CFAA specifically defines "protected computer" as "a computer exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States; or that (i) is part of a voting system; and (ii)(I) is used for the management, support, or administration of a Federal election; or (II) has moved in or otherwise affects interstate or foreign commerce."

**a.** Counts II and IX of the Complaint are **DISMISSED WITH PREJUDICE.**

**b.** Counts I, III, and VIII of the Complaint are **DISMISSED WITHOUT PREJUDICE.** Plaintiff shall have fourteen (14) days from the entry of this Order to file a Second Amended Complaint.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 7th day of October, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE